JANE SMITH, Personal Representative of David Smith, Deceased, and as Adm'r of the Estate of David Smith, Deceased, for the benefit of Jane Smith, Indiv., *et al.*, Plaintiff-Appellant, v. ARMOR PLUS COMPANY, INC., *et al.*, Defendants-Appellees.

Second District   No. 2—92—0861

Opinion filed August 9, 1993.

Reid S. Jacobson and Stacey L. Seneczko, both of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan, for appellant.

Michael K. Noonan, of Sullivan, Smith, Hauser & Noonan, Ltd., of Waukegan, for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Jane Smith, as personal representative and administrator of the estate of David Smith (Smith), appeals from a grant of summary judgment in favor of defendants, Armor Plus Company, Inc. (Armor), a corporation headquartered in Wisconsin, and its former employee, Richard Grouleau, in a suit under the Wrongful Death Act (740 ILCS 180/1 *et seq.*) (West 1992)). Smith was killed when a car in which he was riding drove off the highway and onto the shoulder, where it collided with a disabled Armor truck that Grouleau, the driver, had abandoned there. The trial court held, as a matter of law, that Grouleau's alleged negligence did not proximately cause Smith's fatal injuries.

On appeal, plaintiff argues that she raised genuine factual issues as to all elements of negligence, including proximate cause. She maintains that the trial court ignored evidence that Joshua Block would not have driven the car onto the shoulder had Grouleau warned adequately of the truck's presence. Defendants reply that the record demonstrates that the presence of the truck entirely off the roadway was only a condition and not a proximate cause of the collision, and that Block's erratic driving was the sole proximate cause of the accident. In rejoinder, plaintiff argues that the safety statutes Grouleau

violated assume that the sort of occurrence here was sufficiently foreseeable so that Grouleau's violation of his statutory duties could be a proximate cause of the collision even though the truck was off the roadway at the time of the collision.

The fatal collision occurred at about 12:40 a.m. on November 18, 1989, on the right shoulder of Interstate 94 in Lake County just north of milepost 66. The complaint alleged that on November 17, 1989, Grouleau parked and abandoned the truck on the east emergency shoulder of Interstate 94 after the truck became disabled. Block's vehicle collided with the rear of the truck, causing Smith's injuries.

Plaintiff alleged that the collision and Smith's injuries proximately resulted from one or more of the following negligent acts or omissions by Grouleau: (1) failure to remove the truck from the shoulder within a reasonable time of abandoning it; (2) failure to carry emergency warning devices as required by the Illinois Vehicle Code (625 ILCS 5/ 12—702(a) (West 1992)); (3) failure to place emergency warning devices behind the truck, as required by law (625 ILCS 5/12—702(e)) (West 1992)); (4) failure to place emergency warning devices on the curve in the roadway directly south of the collision site (625 ILCS 5/ 12—702(d) (West 1992)); (5) abandoning the truck without insuring that it was removed from the shoulder; and (6) failure to park the truck at the nearest tollway oasis when Grouleau knew or should have known that the truck was about to become disabled.

Defendants moved for summary judgment, contending that their alleged negligence was at most a condition and not a proximate cause of the accident. They argued that when Grouleau stopped the truck at the nearest oasis, the truck was operating properly. When the truck developed mechanical difficulties, Grouleau parked it on the shoulder, entirely off any lane of vehicular traffic. Prior to the collision, emergency flashers on the truck were activated. Before the collision, defendant's agents advised the State Police of the truck's location. Joshua Block, the driver, could not remember the collision or any of the events leading up it.

Defendants maintained that these facts entitled them to summary judgment based on the lack of any issue of proximate cause. They reasoned that because the truck was parked well off the roadway, out of the area intended for motor vehicle traffic, the truck's presence was at most a condition of the accident. It was not a proximate cause of the accident because the truck did not cause Block to drive off the roadway; Block's improper departure from the road, whatever the cause, was an intervening efficient cause of the crash.

Defendants filed several documents in support of their motion for summary judgment. An affidavit of Phil Weber (not further identified in the record) stated that at an unspecified time on November 18, 1989, he was headed north on the Illinois Tollway near milepost 66. He discovered the abandoned Armor Plus truck, which was parked on the east shoulder, entirely off the part of the tollway designated for travel. Before he departed, Weber activated the truck's emergency flashers.

Defendants also submitted Grouleau's March 28, 1991, deposition. At the time of the accident, Grouleau worked as a roofer for Armor. On November 17, 1989, he and Tony Cortez took turns driving the truck back from a jobsite in Michigan. As they rode into Illinois, sleet and snow began to fall. It became colder, and ice patches started forming on the road. When the two men stopped at the Lake Forest Oasis, the truck was "running fine." At about 3 or 4 p.m., as Grouleau drove north, the truck started to overheat, indicating to Grouleau that a fan belt had broken. The power steering was impaired and an "idiot light" came on, indicating overheating or problems with oil pressure.

Because the engine was overheating, Grouleau pulled the truck onto the right shoulder of the road. As he recalled at his deposition, the truck was completely off the roadway. In fact, the rear wheels of the truck were in the grass, with the right rear double tires on the edge of the grass not far from a ditch. Grouleau went as far off the roadway as he considered safe. Grouleau and Cortez turned on the flashers on the truck. An individual whom Grouleau did not recognize came along to assist the men. The truck had no radio, so Cortez and the other man walked north to call for a tow truck. After a half hour, Cortez returned and told Grouleau he had asked a State Police officer to call a tow truck. The officer agreed to do so but said that it would take a while because there had been so many accidents.

About a half hour later, Tom Pulda, an Armor sales representative, drove along and offered Grouleau and Cortez help. The snow was increasing, the temperature was falling, and ice was on the roadway. At about 4:30 or 5 p.m., Pulda, Grouleau, and Cortez rode back to Wisconsin in Pulda's car. Pulda called the State Police by car phone and arranged for them to send a tow truck to remove the Armor truck as soon as possible. Pulda also called Armor's owner. Grouleau did not recall whether this was before or after the call to the police. The owner told Pulda to leave the truck there; in the morning, someone would come to repair the truck unless it had been towed away. The men drove off, leaving the truck where it was

parked. En route to the Wisconsin border, Grouleau noticed the after-effects of three accidents that Cortez had mentioned. These accidents involved both multivehicle collisions and cars sliding off the roadway into ditches.

Grouleau admitted that before he left in Pulda's vehicle he turned off the truck's flashers. He put no warning devices behind the truck as he knew that his truck contained no such devices. He did not believe Pulda's car had any such warning devices either.

In his March 28, 1991, deposition, Thomas Pulda testified that, on the morning after the accident, Armor's manager called him at home and informed him about the disabled truck. Pulda did not witness the accident, but he noticed the disabled Armor truck as he was driving a pickup truck back from Chicago. Grouleau's truck was parked on the shoulder, an area designated for disabled vehicles, and Grouleau was present. Pulda did not recall whether the truck's flashers were on at this time. About an hour later, Cortez returned and explained that it would be difficult to get assistance. Pulda drove off with Cortez and Grouleau.

Before he left the scene, Pulda called Armor's owner and told him about the abandoned truck. He next contacted the State Police, explained the situation to a trooper, and asked for his advice. The trooper told Pulda that the police would tow the truck if Armor's employees left the truck there. Because there had been so many accidents that day, the trooper was not sure if the police could tow the truck away that night. Pulda and his fellow Armor employees decided to leave the towing to the police. At the deposition, Pulda did not recall seeing any flashers on the abandoned truck as he drove away. Also, he did not recall that any Armor employees had put out any warning devices, such as markers or reflective triangles. The idea of putting up such warning devices did not occur to Pulda when he was at the scene. Pulda's truck carried no such warning markers.

Defendants further submitted the March 27, 1991, deposition of Joshua Block. At the time of his deposition, Block was 18 years of age. He and Smith had been close friends. Block did not remember the accident itself, but he remembered the circumstances preceding the collision. On Friday, November 17, 1989, Block and Smith left Gurnee at about 4:30 p.m. to go to a party in De Kalb. It was snowing steadily and they arrived at the party at about 7 p.m. Block drank some beer that evening but did not feel at all intoxicated when he drove away at about 10 or 10:30 p.m. On the way back, Block stopped for food at a Burger King at the O'Hare oasis. When they left the Burger King it was snowing lightly and the temperature was below

freezing. The road was slippery in spots and had been plowed to some extent. Block drove north in the outer right lane of Interstate 94. The speedometer gauge light was out, and neither front window would close completely; otherwise, the car was not defective.

Block drove under Route 60, which crosses over the top of the tollway. He did not specifically recall passing the Lake Forest oasis; however, he recalled that when his car was north of the Lake Forest oasis but an uncertain distance south of O'Plaine Road, he was thinking of exiting at Belvidere Road. At this point, a sheet of snow from a passing car in the middle lane flew onto Block's windshield, obscuring his view. Block could not say in his deposition how far south of milepost 66 he was when the snow hit his windshield. Also, he did not know where in relation to the accident this problem arose. He did not recall whether he turned on his windshield wipers to clear off the snow. He recalled nothing of what happened between the time the snow was thrown onto his windshield and the time he woke up in a hospital after the accident. Before the collision, he never saw the disabled Armor truck and did not know whether the truck was in any lane of traffic when the collision occurred. Block could not say whether the condition of the road or of the car had anything to do with the accident. To his knowledge, there had been no inspection of the car to determine whether mechanical failure had been a cause of the crash.

Defendants submitted the deposition of Illinois State trooper James Kirkpatrick. On November 17, 1989, Kirkpatrick went to work before his normal 7:30 p.m. starting time because it was snowing heavily. He drove to the Tri-State Tollway with instructions to respond to calls for help in the area. Defendants' truck was one of several abandoned vehicles that Kirkpatrick observed before the accident. He testified that, as best he could estimate, he saw defendants' truck at about 12:30 a.m. At this time, the taillights were not illuminated. No flares or reflective markers were behind the truck and no flashers were operating even though an abandoned vehicle is required to display some kind of warning. Kirkpatrick testified that the State Police have no set policy on whether to record the sighting of an abandoned vehicle. Customarily, Kirkpatrick advised operators to move such vehicles within two hours, although he could not say that this was State policy. He might place a red sticker on an abandoned vehicle. He did not notice any such sticker on defendants' truck when he first saw the truck, and he placed no sticker on the truck before the accident. Kirkpatrick never spoke to the truck's operator or owner. He gave priority to disabled vehicles that were all or partly on the roadway

and thus more hazardous than those, such as Grouleau's truck, that were completely off the roadway.

At 12:44 a.m., Kirkpatrick was dispatched to the accident scene. He arrived at 12:53. One of the truck's taillights was on. No other lights were on. No reflective markers were in the roadway or on the shoulder. The truck was completely off the paved part of the road. There was no snow on the northbound part of Interstate 94 or on the shoulder near the accident scene. Some snow was in a ditch about two feet off the roadway. The roadway was not icy. According to Kirkpatrick's accident report, there were no roadway defects that might have contributed to the accident. The road was straight and level and the surface was dry and clear. It was no longer snowing, and the temperature was below freezing.

Block was lying in the center lane, receiving paramedical treatment. Kirkpatrick saw no skid marks on the shoulder or on the area of the pavement from which Block's vehicle had departed. He saw no marks at all indicating exactly where the vehicle went off the roadway and entered the shoulder. From Kirkpatrick's inspection of the wreckage, it appeared that the right front section of Block's vehicle hit the left rear part of the truck. Block's vehicle made tire marks after it hit the truck. Kirkpatrick's report noted that there was no rain, snow, or ice on the windshield of Block's vehicle and that apparently nothing obscured Block's vision at the time of the accident. About three hours after the collision, Kirkpatrick talked to Block at the hospital. Block remembered nothing about the accident itself. Block did recall that snow had been thrown onto his windshield, but he did not remember where or when this happened.

Plaintiff responded to the summary judgment motion, attaching Grouleau's deposition, excerpts from the transcripts of the December 21, 1989, coroner's inquest into Smith's death, and an affidavit from Joshua Block, dated March 21, 1990. Plaintiff argued that evidence supplied by both parties allowed a fact finder to conclude that Grouleau had been negligent in failing to activate any emergency warning devices or lights after he abandoned the truck. Plaintiff noted that Phil Weber's affidavit described actions undertaken well before either inspection by Officer Kirkpatrick, who found no warning devices near the truck. Also, there was evidence that the accident scene was slightly north of a curve in the roadway, that the area was not well illuminated, the truck was white, and there was evidence that there was snow on the shoulder, all contributing to the danger of a foreseeable accident involving the abandoned truck.

Plaintiff asserted she had raised a factual issue as to proximate cause, because it was foreseeable that defendants' failure to warn that the truck was on the shoulder helped to cause the collision. In his affidavit, Block stated that because there was no warning that the truck was on the shoulder, the snow thrown onto his windshield by a passing car before he reached the O'Plaine overpass prevented him from seeing the truck. Had Block known the truck was on the shoulder, he would have steered left when the snow hit his windshield. Thus he would have avoided the accident. Plaintiff argued that the failure to warn of the truck created a foreseeable risk of harm, as it is well known that vehicles often drive onto the shoulder for valid reasons.

At the coroner's inquest, Officer Kirkpatrick testified that when he reached the accident scene Block's vehicle was lying sideways in the inside lane of travel, and Block and Smith lay in the roadway. Grouleau's two-axle box truck had been pushed "into the right ditch line." Kirkpatrick concluded that Block's vehicle ran off the road and struck the truck, which had been parked on the right shoulder. The windshield of Block's car was gone. After interviewing Block, Kirkpatrick concluded that the condition of Block's windows did not obscure Block's vision.

Kirkpatrick stated that Interstate 94 is a six-lane highway with three lanes in each direction and completely paved shoulders. There is a straight stretch of road about three-quarters of a mile long immediately north of a sweeping curve. A driver emerging from the curve would have driven slightly over a quarter mile before catching up to the abandoned truck. The area was not well lighted. Because the truck had no warning lights, markers, or flares, an approaching motorist would have no warning that it was there until he saw the truck in his headlights. The weather on November 17 and 18 was extremely cold, with snow and ice forming. At the time of the occurrence, the roadway was mostly dry from salting, but the shoulders were still snow covered and slippery. It did not appear to Kirkpatrick that the icy conditions had caused Block's vehicle to lose control. Kirkpatrick saw no skid marks prior to the point of impact between the two vehicles. "Yaw marks" were in the roadway where Block's vehicle had skidded sideways crossing the lanes. From the accident scene and photographs of the damage, Kirkpatrick concluded that Block's car had gone underneath the truck's deck plate, which was about four feet above ground. Although he was not certain, Kirkpatrick saw no indication that Block's vehicle went out of control before it struck the truck. When Kirkpatrick saw the truck before the accident, the truck

was completely on the shoulder, although Kirkpatrick could not recall how far off the roadway it was parked.

Deputy Coroner Chris Dreyer testified that he arrived at the accident scene at about 1 a.m. on November 18. Unlike Kirkpatrick, he found the road icy, and his car fishtailed as he turned north on the way to the scene. The accident site itself appeared to be dry, as Kirkpatrick had said.

The trial court granted defendants' motion for summary judgment. Plaintiff timely appealed. The parties agree that the resolution of this appeal turns on whether the trial court was correct that, as a matter of law, any negligence on defendants' part did not proximately cause Smith's fatal injuries.

Summary judgment is proper if the pleadings, depositions, affidavits, admissions, and other matters on file demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. (735 ILCS 5/2—1005(c) (West 1992).) Summary judgment is a drastic means of disposing of litigation and should be granted only when the moving party's right thereto is free of doubt. (*Gonzalez v. State Farm Mutual Automobile Insurance Co.* (1993), 242 Ill. App. 3d 758, 760.) The court should construe the evidence strictly against the movant and liberally in favor of the opponent. (*Richter v. Burton Investment Properties, Inc.* (1993), 240 Ill. App. 3d 998, 1001.) A plaintiff against whom summary judgment is sought need not prove her case at this preliminary stage, but she must present some factual basis that would arguably entitle her to judgment. (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 939.) If reasonable persons could draw different inferences from undisputed facts, an issue of fact exists. *Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 272.

To recover in negligence, plaintiff ultimately would need to prove that (1) defendants owed Smith a duty of due care; (2) defendants breached that duty; and (3) defendants' breach proximately caused Smith's injuries. (See *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140.) Defendants do not argue that plaintiff has not raised a factual issue on the first two of these points. We agree with plaintiff that the substantial evidence that defendants violated numerous safety statutes in failing to warn of the truck's presence on the shoulder suffices to raise a factual issue as to defendants' breach of a duty of due care to Smith, a passenger in a vehicle properly in the lane of traffic next to the shoulder. The violation of a safety statute is *prima facie* evidence of a breach of a duty of due care where the injured party is within the class of persons that the statute is intended to protect. (*Fi-*

lipetto v. Village of Wilmette (1985), 135 Ill. App. 3d 781, 785; Sears v. Kois Brothers Equipment, Inc. (1982), 110 Ill. App. 3d 884, 891.) Furthermore, defendants have not denied that the failure to remove the truck from the shoulder within a reasonable time could amount to negligence.

Thus the pivotal issue is whether plaintiff adequately supported her assertion that defendants' alleged negligence was a proximate cause of Smith's injuries. A proximate cause is one which produces the injury through a natural and continuous sequence of events unbroken by any effective intervening cause. (Ball v. Waldo Township (1990), 207 Ill. App. 3d 968, 973, relying upon Kemp v. Sisters of the Third Order of St. Francis (1986), 143 Ill. App. 3d 360, 361.) An injury may have more than one proximate cause, and a defendant may be liable even if his negligence is not the sole proximate cause of the plaintiff's injuries. Bentley v. Saunemin Township (1980), 83 Ill. 2d 10, 17; Young v. Gateway Transportation Co. (1975), 26 Ill. App. 3d 864, 872; Kinsch v. Di Vito Construction Co. (1964), 54 Ill. App. 2d 149, 154.

■■ Every inquiry into whether a defendant's negligence proximately caused a plaintiff's injury is really a twofold inquiry into (1) whether the defendant's negligence was a cause in fact of the injury; and (2) whether the defendant's negligence was sufficiently closely connected with the injury so that, given considerations of justice or policy, the defendant should be held liable for the injury. The plaintiff has the burden to satisfy each of these two prongs of inquiry. (See Novander v. City of Morris (1989), 181 Ill. App. 3d 1076, 1080, quoting W. Prosser, Handbook of the Law of Torts §41, at 236 (4th ed. 1971).) What constitutes the proximate cause of an injury is ordinarily a question of fact to be decided by the jury. It can be a question of law only where there can be no reasonable differences in the inferences to be reasonably drawn from the undisputed facts. Lindenmier v. City of Rockford (1987), 156 Ill. App. 3d 76, 90.

■■ It is our opinion that the evidence before the trial court in the present case created a triable issue of material fact as to whether defendants' actions in abandoning the truck on the shoulder during serious weather conditions without the use of statutorily required warning devices constituted a proximate cause of the collision. Where an injury is reasonably foreseeable—even if not in the precise form that it actually takes—then the connection between the negligence and the injury is not too remote to insulate the defendant from liability. (Novander v. City of Morris (1989), 181 Ill. App. 3d 1076, 1081; Filipetto v. Village of Wilmette (1985), 135 Ill. App. 3d 781, 786.)

Thus, an intervening act will not constitute an "intervening efficient cause" of the injury if the defendant could reasonably have foreseen the intervening act. *Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 15.

Here, we conclude that defendants did not show as a matter of law that Block's erratic driving was an intervening efficient cause of Smith's fatal injuries. The mere fact that the truck was entirely off the roadway at the time of the collision is not dispositive. As is suggested by the very existence of the statutes requiring the use of warning devices when trucks are disabled on a shoulder, the fact that the truck was entirely off the roadway does not by itself demonstrate that the danger caused by its presence was not reasonably foreseeable. It might be reasonably anticipated that during weather conditions impairing visibility a vehicle might for some reason temporarily stray across the line of the shoulder and strike an unlighted truck parked in proximity to the lane of traffic.

We agree with plaintiff that the reasoning of *Kinsch v. Di Vito Construction Co.* (1964), 54 Ill. App. 2d 149, applies to this case. In *Kinsch*, the car in which the plaintiff's decedent was riding drove off the road and onto the shoulder, where it struck a large cement block that the defendant had left about three feet off the roadway. The impact fatally injured plaintiff's decedent. The jury found that both the driver and the defendant had been negligent, and it awarded damages pursuant to the Wrongful Death Act. On appeal, the defendant argued that as a matter of law the driver's negligence was the sole proximate cause of these injuries. In rejecting this assertion, the appellate court noted that the defendant's negligent act need not be the sole cause of the accident for plaintiff to recover. It was sufficient that two negligent acts combined to produce the injury. (*Kinsch*, 54 Ill. App. 2d at 154.) Furthermore, even though the driver had been negligent, the danger that the defendant's negligence would cause injury of some sort was reasonably foreseeable. The court observed that it was common knowledge that even careful drivers occasionally need to use the shoulder of the road for emergencies or other situations. The court continued:

> "We think that any prudent man would foresee that by placing a massive obstruction on the shoulder of a road within 3 or 4 feet of the edge of the roadway, without illuminating it or erecting signs warning of its presence, injury might result to those who, in emergency situations or otherwise, might stray from the roadway itself onto the shoulder." *Kinsch*, 54 Ill. App. 2d at 155.

The cases upon which defendant relies are distinguishable. In *Ball v. Waldo Township* (1990), 207 Ill. App. 3d 968, the driver of the car in which the plaintiff was riding elected to leave the roadway, drive through a bean field, then travel back across the road, striking a culvert owned by the defendant municipality. The appellate court upheld a grant of summary judgment for the defendant, noting that the driver's extraordinary deviations from normal driving behavior were the intervening efficient cause of the accident. As *Kinsch* implies, the use of a highway shoulder is distinguishable from the unforeseeable actions of the driver in *Ball*.

In *Salinas v. Werton* (1987), 161 Ill. App. 3d 510, the defendant left a disabled tow truck off the roadway with all the truck's safety lights activated. The plaintiff's decedent stood near the tow truck. Soon, a motorist drove his van off the road, striking and fatally injuring the decedent. In affirming summary judgment for the owner of the tow truck, the appellate court held that the owner's failure to place flares alongside the truck was not the proximate cause of the decedent-bystander's death.

The *Salinas* court observed that plaintiff's only causation testimony was speculation by an expert that the placement of flares would have caused the driver of the van to slow down. Here, the driver of the vehicle in which plaintiff's decedent rode testified (however credibly is not for this court to say) that he would have shifted lanes had there been any lighting in the vicinity of the defendants' truck. Also, in *Salinas*, the truck itself was not involved in the accident, in contrast to the present case. Finally, the *Salinas* court observed that the plaintiff produced no evidence that the operator owed or breached a duty to the decedent.

In *Henderson v. Beckman Texaco* (1991), 213 Ill. App. 3d 1054, plaintiff's decedent was killed when the automobile he was driving went off the roadway and crashed into the front of a tow truck that was at rest on the shoulder adjacent to the median. The truck had been sent there to tow away a police car that had become stuck in the median. The tow truck had its yellow emergency lights on, but plaintiff alleged that the operator had failed to place any warning markers in the vicinity.

In affirming the grant of summary judgment, the *Henderson* court observed that the operator of the tow truck was under no duty to provide warning flares or signals. Moreover, even if such a duty existed, the breach of that duty did not proximately cause decedent's death. The court observed that there was simply "nothing in the record to support any inference that [the failure to use warning devices]

contributed in any way to the collision which caused the decedent's death." *Henderson*, 213 Ill. App. 3d at 1061.

The present case is distinguishable from *Henderson*. First, the plaintiff here, unlike the plaintiff in *Henderson*, did produce some evidence that defendants' negligence was a cause in fact of the accident that killed the plaintiff's decedent. Block, the driver, stated in an affidavit, "If I had known the truck was there on the shoulder I would have steered left when the snow hit my windshield." We note further that in *Henderson* the truck's lights were flashing; here, there was at least a factual issue as to whether defendants' truck was illuminated at all. It must also be noted that the *Henderson* court's comments concerning proximate cause were secondary to its primary basis for upholding summary judgment for the defendants, *i.e.*, that because the tow truck was not a "disabled vehicle," defendants had no duty to use warning devices.

We find the principles discussed in *DiBenedetto v. Flora Township* (1992), 153 Ill. 2d 66, to be inapplicable to the resolution of the present case. In *DiBenedetto* a motorist lost control of his vehicle, crossed the oncoming lane of traffic as well as a five- to seven-foot shoulder, and overturned in a drainage ditch adjacent to the shoulder. Our supreme court held that the defendant township had no duty to keep the ditch safe for vehicular traffic, and further commented that the proximate cause of the accident was the loss of control of the vehicle and its being driven off the traveled way. The court specifically noted, "There is no claim here that the traveled portion of the road, *including the shoulder,* was anything but safe." (Emphasis added.) (*DiBenedetto*, 153 Ill. 2d at 70.) The present case, on the other hand, involves an alleged breach of a recognizable duty, imposed by traffic safety laws, and it has not been determined that the car driven by Block was completely out of control, as in the *DiBenedetto* case, before it ventured onto an established shoulder.

It is a reasonable inference that Block may have driven differently had he received any warning of the truck's presence so near the edge of the highway, and that such a change in his driving would have avoided the accident. Although the cause of Block's driving off the road is not entirely discernible from the record of the summary judgment proceedings, it is not clear that the accident was the result of any unforeseeable or extraordinarily careless behavior on his part. The weather conditions were poor; there had been numerous accidents previously; and whether Block was intoxicated at the time of the accident is debatable.

844

Constrained as we are to construe the evidence liberally in favor of plaintiff, we conclude that she raised a genuine factual issue as to whether defendants breached a duty which constituted a proximate cause of decedent's death. Summary judgment for defendants was therefore inappropriate.

The judgment of the circuit court of Lake County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

McLAREN and COLWELL, JJ., concur.