Sheryl KNOBLAUCH, individually, and as administrator of the Estate of Michael Knoblauch, deceased, Plaintiff–Appellant,

v.

DEF EXPRESS CORPORATION, a Nevada Corporation; Gabriel Paura, Ronald Parrott, and T.J. Marquart & Sons, a New York corporation, Defendants–Appellees.

No. 95–3188.

United States Court of Appeals, Seventh Circuit.

Argued March 26, 1996.

Decided June 13, 1996.

Rehearing Denied Aug. 1, 1996.

Louis L. Bertrand, James A. McPhedran, Anthony C. Raccuglia (argued), Raccuglia & Associates, Peru, IL, for Sheryl Knoblauch.

Gary K. Moore (argued), Darlene Strickland, Moore & Maisel, Chicago IL, for DEF Express Corporation, Gabriel Paura.

Stephen B. Frew, Richard T. Valentino, John J. Piegore (argued), Robert A. Barb, Kiesler & Berman, Chicago, IL, for Ronald Parrott, T.J. Marquart & Sons.

Before ESCHBACH, MANION, and ROVNER, Circuit Judges.

ESCHBACH, Circuit Judge.

Two semi-trucks collided on an interstate near Ottawa, Illinois. The driver of one truck left his truck in the lane of traffic. The driver of the other truck pulled onto the shoulder. Minutes later a pick-up truck driven by Michael Knoblauch collided with the truck parked in the lane of traffic, killing Knoblauch. Sheryl Knoblauch, Michael's wife, filed suit against the owners and drivers of both trucks, arguing that the drivers' negligence was a proximate cause of her husband's death. The district court granted summary judgment in favor of the defendants, concluding that under Illinois law Mrs. Knoblauch is unable to establish proximate cause as to some of her claims and breach of duty as to others. Reviewing the district court's decision *de novo*, we agree only in part. Therefore, we affirm in part, reverse in part, and remand.

## I.

The facts of this case are contested vigorously by the parties. The record is replete with contradictory factual accounts. Indeed, some of the parties have themselves offered conflicting accounts. In what follows, we set forth the events that sparked this litigation to the extent that we can garner them from the record.

On December 16, 1993, two semi-trucks proceeded west in the right lane on an unlighted portion of Interstate 80 near Ottawa, Illinois. The two trucks topped a small hill's crest in the road. At approximately 9:40 p.m., roughly 1000 feet over the hill's crest, one truck driven by Gabriel Paura and owned by DEF Express Corporation (hereinafter "DEF") "rear-ended" the other truck driven by Ronald Parrott and owned by T.J. Marquart & Sons, Incorporated (hereinafter "Marquart"). The circumstances regarding the cause of the accident are in dispute. Paura told officers at the scene that Parrott appeared to be stopped either on the right shoulder of the road or in the lane itself; all Paura saw were the brake lights on Parrott's truck.[1] Paura claimed that due to traffic in the passing lane, he had no choice but to hit Parrott. Parrott, on the other hand, contended that Paura was simply driving too fast and ran into him.

In any event, following the collision Paura stopped his truck in the road. Paura proffered multiple rationales for leaving his truck in the road, as opposed to driving it onto the shoulder, including: that Paura feared the truck's batteries would explode; that Paura feared that the truck's lights would go out; and, that Paura somehow knew that the truck would not "take off." Paura neither inspected the truck nor attempted to start the truck. Paura has given differing accounts of his subsequent conduct. He told a state trooper at the scene that he proceeded to the front of his truck when a pick-up driven by Michael Knoblauch crashed into the rear of the truck, killing Knoblauch. In a deposition, however, Paura testified that he placed warning triangles behind his truck and attempted to direct traffic around the truck. Paura said in his deposition that he saw Knoblauch's truck approaching him and that Knoblauch drove over two of the three warning triangles behind Paura's truck.[2]

---

1. In a deposition Paura claimed that Parrott in fact had pulled from the right lane of traffic onto the right shoulder of the road, and then swerved back into the lane, forcing Paura to hit him.

2. A deposition given by Jose Villalta, a passenger in Paura's truck, corroborated the account given by Paura in Paura's deposition.

After the collision with Paura, Parrott drove his truck forward several hundred feet[3] onto the left shoulder of the road, turned on his truck's hazard lights, and exited the truck. Like Paura, Parrott has given varying accounts of what happened once he secured his truck. He told a state trooper at the scene that after securing his truck he proceeded to Paura's truck. He told the trooper that on his way to Paura's truck he saw the pick-up driven by Michael Knoblauch collide with Paura's truck. In a subsequent deposition, however, Parrott claimed that after he secured his truck he instructed Paura to place flares or reflectors in the road and that Paura reached for the area where flares normally would be stored in the truck. Parrott said that he did not actually see Paura place flares or reflectors in the road. Parrott said in the deposition that following his discussion with Paura he returned to his truck. From the cab of his truck he observed a few cars passing. Parrott claimed in his deposition that while seated in his truck he heard a second collision five to six minutes[4] after his collision with Paura. Parrott also claimed in the deposition that after the accident he kicked broken pieces of triangle reflectors from the scene of the Knoblauch/Paura collision. Parrott said that he assumed that the reflectors were placed there by Paura prior to the accident.

La Salle County Sheriff's Department Officers and Illinois State Troopers responded to the scene. Captain Skutt of the La Salle County Sheriff's Department was the first officer to arrive. Skutt's observations of the scene revealed considerable debris, but he did not discover any debris from warning triangles nor did he observe Paura's hazard lights.

Trooper Long completed a written report regarding the accident. Trooper Long also observed hazard triangles at the scene of the accident. However, Long opined that the triangles were placed in the road after the Knoblauch/Paura collision because of the temporal proximity of the two accidents and because one triangle located behind Knoblauch's truck was still standing. Long also said that when he arrived at the scene he observed no hazard lights activated on Paura's truck, although he did observe that Paura's taillights were on. Trooper Long issued a citation to Paura for the Parrott/Paura collision.

The day following the accident Trooper Long received a rather unusual phone call from an unidentified caller claiming to represent either DEF or its insurer.[5] The caller sought to insure that Trooper Long's description of the accident was "correct," informing Long for the first time that after Paura's collision with Parrott, but prior to the Knoblauch collision, Paura placed red warning triangles in the road behind his truck. Following the phone call, Trooper Long contacted Parrott. Parrott gave a slightly different description of the events surrounding the accident. Parrott told Long that the Knoblauch accident did not occur as Parrott was walking back to Paura's truck. Rather, it occurred five to ten minutes later, after Parrott had returned to his truck. Further, Parrott said that Paura's reflectors were in the road prior to Knoblauch's accident, but that Paura's hazard lights were not on.

Trooper Roth, who also responded to the scene, noticed hazard triangles placed behind Knoblauch's truck. Roth also took pictures of the scene. Apparently the pictures reveal no evidence of shattered hazard triangles. Further, Roth inspected Paura's truck. He observed that the truck's steering mechanism was functional. In Roth's opinion, Paura could have moved the truck onto the shoulder and completely out of the traffic lane.

Sheryl Knoblauch, both individually and as administrator of her husband's estate, filed this suit in diversity in federal court against Paura, Parrott, DEF, and Marquart pursuant to the Illinois Wrongful Death Act, 740

---

3. The record contains conflicting testimony regarding exactly how far Parrott drove forward before stopping. The exact distance is not material to our opinion.

4. Parrott conceded in his deposition the possibility that less than five minutes passed between the two collisions.

5. Trooper Long could not recall, and failed to record, the identity of the caller.

ILCS 180/1 (1995), and the Illinois Survival Act, 755 ILCS 5/27–6 (1995). The complaint as amended alleged that Paura negligently caused Knoblauch's death by: causing a collision with Parrott; failing to keep his truck under proper control while driving it; failing to place proper warning signals behind his truck; stopping his truck on the highway creating a dangerous obstruction when Paura could have driven to the road's shoulder; and, failing to remove his truck from the road when he had the opportunity to do so. The complaint made the same allegations against Parrott, including that Parrott caused the Parrott/Paura collision.

Parrott and Marquart brought a motion for full summary judgment. Paura and DEF brought a motion seeking partial summary judgment as to Mrs. Knoblauch's claim that Paura's collision with Parrott was a proximate cause of her husband's accident. The district court granted full summary judgment in favor of all of the defendants. Mrs. Knoblauch brings this appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

■ Summary judgment is granted in diversity cases when there is "no genuine issue as to any material fact," Fed.R.Civ.P. 56(c), and "the non-moving party lacks enough evidence to sustain a jury verdict according to the federal standard: whether reasonable minds could deem the evidence adequate under the governing [state] substantive rule." *Mayer v. Gary Partners & Co.*, 29 F.3d 330, 334 (7th Cir.1994). The district court concluded that no reasonable fact finder could return a verdict for Knoblauch. Reviewing the court's decision *de novo* and viewing the facts in the light most favorable to Knoblauch, we respectfully disagree.

### A. The Parrott/Paura collision.

■ We begin our analysis by considering whether the responsible party in the Parrott/Paura collision can be held liable for Knoblauch's death under Illinois law.[6] In deciding a question of state law before us on diversity jurisdiction, we "must use our own

best judgment to estimate how the [state's] Supreme Court would rule as to its law." *Valerio v. Home Insurance Company*, 80 F.3d 226, 228 (7th Cir. 1996). Our research reveals no opinion by the Illinois Supreme Court directly analogous to the facts of this case. However, Illinois appellate courts have grappled with the issue whether a driver's negligence in causing one accident can be the proximate cause of a subsequent accident. Although we are not bound to follow the holdings of a state's lower courts, after giving the lower courts' opinions "proper regard" we conclude that they offer us a clear indication of the law of Illinois. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967).

### 1. The law of Illinois.

■ The test for whether a driver's negligence in causing one accident can be the proximate cause of a subsequent accident was set forth in *Anderson v. Jones*, 66 Ill. App.2d 407, 213 N.E.2d 627, 630 (Ill.App.Ct. 1966). In *Anderson*, a car driven by Jones traveling westbound on an interstate near Champaign, Illinois went out of control, crossed the median, and collided with a car driven by Johnson in the eastbound lane. *Id.* 213 N.E.2d at 628. Another car in the eastbound lane driven by Watson collided with Johnson. After the collision, Watson's car rocketed through the median and came to a stop in the westbound lane. *Id.* Two cars stopped in the westbound lane in front on Watson's car. *Id.* The first car to stop was driven by Manson; the second was driven by Anderson. *Id.* Five minutes later, a third car driven by Zehr struck the back of Anderson's car, pushing it into the back of Watson's car. *Id.* Anderson successfully sued everybody, including Jones. Only Jones appealed.

A divided appellate court held that whether Jones's conduct was a proximate cause of Anderson's injury could be determined as a matter of law by considering the following factors:

(a) lapse of time; (b) whether the force initiated by the original wrongdoer continued in active operation up to the injury for

---

**6.** The parties agree that the law of Illinois governs this dispute.

which recovery is sought; (c) whether the act of the intervenor can be considered extraordinary rather than usual or normal and (d) whether the intervening act was a normal response to the situation created by the wrongdoer or an extraordinary response.

*Id.* at 630. The appellate court noted that: three to ten minutes passed between the collisions; the force from the original collision was spent before the second collision; and, Zehr's conduct was unusual given that both Manson and Anderson had successfully stopped. The court ruled that Zehr was the proximate cause of Anderson's injuries as a matter of law, and reversed Anderson's judgment as to Jones.[7] *Id.* at 630–31.

Almost twenty years later the same court decided *Cox v. Stutts*, 130 Ill.App.3d 1018, 86 Ill.Dec. 185, 474 N.E.2d 1382 (Ill.App.Ct. 1985). In *Cox*, an automobile accident occurred in the southbound lanes of an interstate near Tuscola, Illinois. *Id.* 86 Ill.Dec. at 186, 474 N.E.2d at 1383. Hickerman approached the accident, but was unable to stop and drove into one of the idled cars. *Id.* When Hickerman's car came to a stop, it was struck by another vehicle. *Id.* Subsequent collisions followed for approximately one hour. *Id.* Heath drove one of the vehicles in the subsequent collisions. *Id.* Cox's car followed Heath's, but Cox successfully stopped before hitting Heath. Cox left her car to check on Heath's condition. *Id.* Cars behind Cox's car also successfully stopped. *Id.* Unfortunately, yet another car eventually arrived on the scene. *Id.* Unable to stop, the final car struck the car in front of him, producing a chain reaction that eventually propelled Cox's car to strike Cox, severely injuring her. *Id.*

Cox filed suit against several parties, including Heath. Many of the defendants, Heath among them, sought and secured summary judgment awards in their favor. *Id.* Cox appealed the grants of summary judgment. A unanimous appellate court reversed as to Heath. The court rejected the lower court's finding that the car that started the

chain reaction, not Heath, was the proximate cause of Cox's injuries as a matter of law. Citing an Illinois Supreme Court holding, the dissent in *Anderson,* and the Restatement (Second) of Torts, the court concluded that whether Heath's negligence was a proximate cause of Cox's injuries was a factual question properly left for the jury. *Id.* 86 Ill.Dec. at 188–89, 474 N.E.2d at 1385–86. The court reasoned that a jury could find that Heath's negligence was a substantial factor in causing Cox's injuries. *Id.* The court distinguished *Anderson,* noting that in *Anderson:*

> ... the sequence of events started when the defendant's westbound vehicle went out of control, crossed a median strip which was six inches high and three feet wide and ended up in the eastbound lanes. Then, a collision occurred in the eastbound lanes of traffic knocking a vehicle back over the median strip and into the westbound lanes of traffic in which the defendant had originally been travelling.... The negligence of the defendant there was much more attenuated from the ultimate injuries for which recovery was sought than was the conduct of Heath here.

*Id.* at 190, 474 N.E.2d at 1387. Although *Cox* professed to distinguish *Anderson,* by suggesting that in the collision context proximate cause is a factual question, *Cox* seriously called into question a court's ability to find no proximate cause as a matter of law.

Affirming a jury verdict in favor of a defendant, the court in *Cherry v. McDonald,* 176 Ill.App.3d 471, 125 Ill.Dec. 899, 531 N.E.2d 78 (Ill.App.Ct. 1988), bolstered the analysis set forth in *Cox.* Michael McDonald, a minor, was driving along an interstate in Illinois when he began experiencing trouble with his car. *Id.* 125 Ill.Dec. at 900, 531 N.E.2d at 79. McDonald slowed his car and began to turn onto a vehicle "turnaround" when a semi-truck struck the back of McDonald's car. *Id.* The truck tipped over, and the truck's trailer blocked one and one-half lanes of the interstate. *Id.* Five to ten minutes later, after other cars passed the scene of the accident, a car driven by Joseph

---

7. The court's holding in *Anderson* provoked a stern dissent, arguing that whether Jones's conduct was a proximate cause of Anderson's colli-

sion was a factual question for the jury. *Id.* 187 Ill.Dec. at 631–32, 617 N.E.2d at 1352–53 (J. Craven, dissenting).

Cherry struck the trailer. *Id.* Cherry and his wife sued McDonald and his father, alleging that McDonald's negligence was a proximate cause of the Cherrys' accident. *Id.* A jury ruled in favor of McDonald and his father. *Id.* The Cherrys appealed, arguing that McDonald's negligence was a proximate cause of their accident as a matter of law.

Affirming the jury's verdict, the appellate court noted that a reasonable jury could have concluded that McDonald's negligence either was or was not the proximate cause of the Cherry collision:

> [T]he determination of proximate cause is one for the jury, each case must rest upon its own facts. As a result, no two situations are completely analogous. The issue can only be determined from a complete examination of the factual situation. From the instant facts, the jury could have concluded the negligence involved in Michael's conduct was quiescent. Several minutes had passed between the initial collision and the collision between the trailer and Joseph's vehicle. Several persons had avoided colliding with the truck, lights were shining on and around it, and Joseph did not appear to react to the presence of the truck or lights. The jury could also have concluded that Thorton was negligent in not setting out flares.

*Id.* at 904, 531 N.E.2d at 83.

**2. The holding below.**

The district court below relied in large part on *Anderson* to dismiss Mrs. Knoblauch's suit. Applying the four part test set forth in *Anderson*, the court found that: there was a "significant lapse of time" between the two collisions; the force of the Parrott/Paura collision was spent before the Knoblauch/Paura collision; and, Knoblauch's acts were extraordinary given that warning triangles were placed behind Paura's truck and that other cars had passed safely.

If *Anderson* was our only indication as to Illinois law, we might agree with the district court that on the facts of this case proximate cause can be determined as a matter of law. However, we believe that in the light of *Cox* and *Cherry*, Knoblauch has raised a factual question under Illinois law that must be re-

solved by the trier of fact. We do not mean to suggest that the district court applied the wrong test. On the contrary, the four-part test set forth in *Anderson* was expressly relied on in both *Cox* and *Cherry*. Rather the question is whether the test should be applied by a trier of fact or a court engaged in summary judgment analysis.

We believe that *Cox* and *Cherry* make clear that the determination of proximate cause in the collision context is usually a factual question. Illinois is a comparative fault state. Illinois courts have decided that the trier of fact is best suited to determine whether an action is a substantial factor in causing an injury and, if so, how much liability should attach. *Anderson* presented a unique set of facts involving several intervening circumstances and two cars crossing a median. The case before us is more analogous to *Cox*. In *Cox*, several minutes passed, the force from the original collision was spent, several cars stopped, and the defendant Heath's reaction to the circumstances was arguably reasonable. Nonetheless, the court considered the issue of proximate cause to be a factual question and sent the issue of Heath's liability to the jury.

Similarly, the facts of this case suggest that several minutes passed, the force from the original collision was spent, and a few cars successfully avoided Paura's truck. However, we disagree with the district court's conclusion that Knoblauch's reaction was necessarily extraordinary because Paura placed warning signals behind his truck and other cars passed Paura's truck. In his deposition, Trooper Long testified that given the position of Paura's truck and the surrounding conditions, Paura's truck posed a significant hazard to other drivers. Whether Knoblauch's response was reasonable is a factual question. We cannot say as a matter of law that the negligent party in the Parrott/Paura collision could not have foreseen the possibility of subsequent collisions as a natural and probable consequence of his negligence. *Cherry*, 125 Ill.Dec. at 904, 531 N.E.2d at 83.

Mrs. Knoblauch should have an opportunity to present her case to the jury. We are

unable to conclude as a matter of law whether Parrott, Paura, or both are responsible for the Parrott/Paura collision. Therefore, Mrs. Knoblauch's claims stemming from the Parrott/Paura collision are reinstated against all defendants.

## B. Paura's failure to move his truck.

■ The district court also dismissed Mrs. Knoblauch's claims against Paura and DEF stemming from Paura's alleged failure to place warning signals behind his truck and his alleged failure to remove his truck from the lane of traffic. The district court ruled that, based on the uncontroverted evidence, Paura placed warning triangles behind his truck as required by statute and that Paura was unable to move his truck to the shoulder of the road.

As to the district court's conclusion regarding Paura's placement of the warning triangles, we agree. Mrs. Knoblauch argues that the record contains deposition testimony from which a trier of fact could infer that Paura neither placed warning triangles behind his truck nor activated his hazard lights. We need not decide this question. Regardless of what the record contains, in her response to the motions for summary judgment Mrs. Knoblauch failed to support her point with specific references to supporting exhibits as required by the district court's Local Rule 12(N)(3)(a). Therefore, the district court was entitled to conclude that Mrs. Knoblauch conceded the issue for the purposes of summary judgment. *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 453 (7th Cir.1994).

■ However, the fact that Paura used warning devices does not resolve the question of whether Paura and DEF are subject to liability for Paura's leaving his truck in the lane of traffic as opposed to driving it onto the road's shoulder. In addressing the issue the district court credited the testimony of Paura and Villalta that the truck was unsafe to move. The court dismissed Trooper Roth's testimony that in his opinion Paura "could have at least steered off to the shoulder a little bit." The court noted that "Trooper Roth, however, does not indicate that he checked under the hood of Paura's vehicle or that he thought it was safe to start the engine." Ultimately, the district court correctly conceded that Roth's testimony "arguably" demonstrates the existence of a material factual dispute, but found that whether Paura could have moved his truck is not dispositive of whether Paura breached a duty of care to Knoblauch.

The court held that Paura's and Villalta's placement of warning triangles combined with their efforts to direct traffic around the scene establish that Paura took appropriate steps to warn approaching drivers that the right-hand traffic lane was obstructed. The district court reasoned that considering these factors, no reasonable fact-finder could conclude that Paura breached his duty of care to Knoblauch. In support of its conclusion the district court cited *Smith v. Armor Plus Co., Inc.*, 248 Ill.App.3d 831, 187 Ill.Dec. 625, 617 N.E.2d 1346 (Ill.App.Ct. 1993).

The district court's reliance on *Smith* is curious. In *Smith*, the driver of a disabled truck drove his truck safely onto the shoulder of the road. *Id.* 187 Ill.Dec. at 628, 617 N.E.2d at 1349. In the midst of a winter storm, the driver abandoned the truck without placing warning flares behind the truck as required by Illinois law. *Id.* A car proceeding in the same direction as the truck was struck by a sheet of snow. *Id.* at 629, 617 N.E.2d at 1350. Unable to see, the driver of the car veered from the road and onto the shoulder, colliding with the truck. *Id.* Smith, a passenger in the car, was killed in the accident. *Id.* at 626, 617 N.E.2d at 1347.

Smith's estate sued the truck's driver and owner, alleging that the driver's negligent failure to place warning signals behind the truck was a proximate cause of the collision. The trial court granted summary judgment in favor of the defendants. *Id.* But the court of appeals reversed. *Id.* at 634, 617 N.E.2d at 1355. The appellate court reasoned that "the fact that the truck was entirely off the roadway does not by itself demonstrate that the danger caused by its presence was not reasonably foreseeable." *Id.* at 632, 617 N.E.2d at 1353. In other words, the court held that because a fact-

finder could conclude that the truck driver could reasonably foresee that his failure to warn on-coming drivers could cause an accident, whether his conduct proximately caused the plaintiff's injury is a question for the jury.

We do not read *Smith* to foreclose the possibility that Paura was negligent in failing to remove his truck from the road or that Paura's alleged negligence was a proximate cause of Knoblauch's collision. Although Paura complied with Illinois's requirements regarding hazard warnings, a fact-finder could conclude that Paura was negligent in leaving the truck in a hazardous position in the traffic lane of an interstate if he was otherwise able to move it. The fact that Paura placed warning signals and directed traffic does not by itself demonstrate that the danger caused by his truck in the middle of the interstate was not reasonably foreseeable to Paura. Nor does it satisfy Paura's duty to remove his truck. As we noted above, Trooper Long testified that Paura's truck presented a hazard posing a threat to other drivers. Therefore, we conclude that whether Paura was able to move his truck and, if so, whether his failure to do so proximately caused Knoblauch's collision are questions for the jury.

Paura and DEF ask us to affirm the district court because, according to them, "[t]here is simply no way of knowing whether it would have been any safer to try to pull onto the shoulder." We find no merit to their argument. Officer Long's testimony, combined with a healthy dose of common sense, reveals that it is safer to pull a semi-truck onto the shoulder of a road than to leave it in a lane of traffic on an interstate. Mrs. Knoblauch's claims against Paura and DEF stemming from Paura's alleged failure to remove his truck from the interstate are reinstated.

## C. Parrott's failure to warn of Paura's truck.

Finally, the district court dismissed Mrs. Knoblauch's claim that Parrott breached his duty to Knoblauch by failing to warn other drivers of the obstruction created by Paura's truck. Mrs. Knoblauch based her claim on an Illinois Motor Vehicle Code provision that requires: "Whenever any motor vehicle ... is disabled upon the roadway of any highway ... the driver of such vehicle shall display the following warning devices upon the highway during the time the vehicle is so disabled...." 625 ILCS 5/12–702(c) (1994). The district court concluded that the statutory language placed no duty upon Parrott to warn of the obstruction created by Paura's truck for the simple reason that Parrott was not the driver of Paura's truck. We agree. The plain language of the statute supports the district court's conclusion. The district court's grant of summary judgment in favor of Parrott and Marquart must stand.

### Conclusion.

Under Illinois law a trier of fact reasonably could conclude that the Parrott/Paura collision was a proximate cause of Michael Knoblauch's death. Sheryl Knoblauch's claims against all defendants as to the Parrott/Paura collision are reinstated. Under Illinois law a trier of fact reasonably could conclude that Paura's truck was operative after the Parrott/Paura collision and that Paura breached his duty to Knoblauch by failing to remove Paura's truck from the lane of traffic, proximately causing Knoblauch's collision. Sheryl Knoblauch's claims against Paura and DEF as to Paura's failure to remove his truck are reinstated. Under Illinois law Parrott had no duty to warn other drivers of Paura's disabled truck. The district court's grant of summary judgment in favor of Parrott and DEF as to Parrott's failure to warn is affirmed.[8]

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

8. The parties shall be responsible for their respective costs.