MICHAEL LAIRD, Adm'r of the Estate of Susan Kilroy, Deceased, Plaintiff-Appellant, v. BAXTER HEALTH CARE CORPORATION *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—92—4213

Opinion filed December 19, 1994.—Rehearing denied May 11, 1995.—Modified Opinion filed May 22, 1995.

A. Denison Weaver, Ltd., of Chicago (A. Denison Weaver and Thomas J. Gorman, of counsel), for appellant.

Menges, Mikus & Molzahn, of Chicago (Joseph J. Wilson and Randall G. Talan, of counsel), for appellees Baxter Health Care Corporation and Kimberly Hudson.

Landau, Omahana & Kopka, Ltd., of Chicago (Jeffrey S. Herden and Creed T. Tucker, of counsel), for appellees Link Carnival and Joseph Stanford Payne.

JUSTICE BUCKLEY delivered the opinion of the court:

Michael Laird (plaintiff), as administrator of the estate of Susan Kilroy, deceased, filed a complaint against Baxter Health Care Corporation (Baxter), Kimberly Hudson (Hudson), Link Carnival (Link), and Joe Stanford Payne (Payne) to recover damages the decedent's parents and siblings suffered as a result of her death. The trial court granted Baxter's and Hudson's motions to dismiss counts I and II on the ground that the exclusivity provision of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.5 (now 820 ILCS 305/5 (West 1992))) barred these claims. It also granted Hudson's motion for summary judgment as to count IV on the ground that there was no genuine issue of material fact that Hudson was not in the scope of her employment at the time of the accident. Finally, the trial court granted Link and Payne's motion for summary judgment on the ground that no genuine issue of material fact existed that they were negligent.

On appeal, plaintiff contends: (1) that because the next of kin's injuries are not compensable under the Act they fall within an exception to the exclusivity provision and, therefore, the common law action against Baxter and Hudson is not barred; (2) that the evidence presented to the trial court created a genuine issue of material fact as to whether Hudson was on a "frolic" at the time of the accident; and (3) that a genuine issue of material fact exists as to whether Link and Payne were negligent.

Plaintiff brought this action against decedent's employer, Baxter, her coemployee, Hudson, and two third parties, Link and Payne, for damages decedent's next of kin sustained as a result of her death due to a motor vehicle accident on July 16, 1990. Counts I, II, and III are premised on common law negligence, the former two against Baxter and Hudson and the latter against Link and Payne. Count IV alleges in the alternative to counts I and II that at the time of the accident Hudson had departed from the scope of her employment and was engaged in a "frolic."

At the time of her death, decedent was 25 years old. Surviving her were her parents and two brothers as next of kin. Neither the decedent's parents nor siblings were financially dependent on her nor have they filed a claim for death benefits under the Act.

On July 16, 1990, Hudson and decedent were employed by Baxter. Their duties consisted of calling on hospitals in Illinois and Wisconsin to sell Baxter's products. Hudson was a new employee who began work four weeks prior to the accident. Because Hudson was taking over decedent's accounts, decedent accompanied Hudson to introduce her to the accounts.

On the day of the accident, the two met at the Hinsdale Oasis at 6 a.m. They decided to drive Hudson's car to their appointments. Hudson believed they were to call on four or five hospitals that day. They proceeded to Kankakee for their first appointment at St. Mary's Hospital, where they met with a blood bank supervisor for about 20 minutes. They next went to another hospital in Kankakee but Hudson could not remember which one. However, she testified that they left that hospital around 9 a.m. after which they went to McDonald's at the I-57 interchange where they had coffee and remained for 15 to 20 minutes. Prior to arriving at McDonald's, they had discussed the route they would take to Peoria. According to Hudson, decedent planned the route. However, Hudson could not recall the route nor could she recall if the two discussed that they had gone too far prior to the accident. As far as she could recall, Hudson believed they were on the proper route. She testified that while driving, the two had a general conversation and talked about having lunch with an "old friend" in Peoria.

According to Hudson, the last thing she remembers was leaving McDonald's, getting on I-57, and proceeding south on I-57. She did not remember seeing the semi-trailer, any flashing lights, or orange markers before the accident. The next thing she recalled was waking up at a hospital two days later.

Hudson did not recall speaking to a State trooper subsequent to the accident and telling him "that while traveling southbound on I-57 [I] was listening to the radio and must have driven off the roadway striking the disabled truck and trailer." In a conversation with plaintiff's investigator, Hudson answered that she was not lost at the time of the accident and that her intended route was to take I-57 from Kankakee south to Route 24, and Route 24 into Peoria. Hudson did not recall making this statement.

Subsequent to her deposition, Hudson executed an affidavit in which she stated that at the time of the accident, she and decedent were en route to meet a blood bank supervisor in Peoria. She indicated that the meeting was to begin at the hospital and then they planned to take the supervisor out to lunch. The affidavit avers:

> "That the reference in my deposition of June 7, 1991 to having lunch with an old friend is a reference to the blood bank supervisor we were going to have lunch with in order to generate additional sales on behalf of Baxter Health Care Corporation."

The most direct route between Kankakee and Peoria is I-57 to Route 24, then Route 24 westbound into Peoria. In her answer, Hudson admits that the accident occurred at milepost 267, or 16 miles south of Route 24 and 45 miles south of Kankakee.

Decedent's appointment book for July 16, 1990, indicated appointments at St. Francis Hospital and Proctor Hospital for that afternoon. Also appearing between the morning and afternoon appointments is the name "Methodist." However, there is no time, address, city or contact identified.

In the affidavit of Margaret Cranford, blood bank supervisor at St. Francis Hospital, the affidavit of Joyce Blank, blood bank supervisor at Proctor Hospital, and the affidavit of Deb Reichen, a blood bank technologist at Methodist Hospital, the respective affiants deny that the decedent was an "old friend," deny having any lunch plans with decedent or any other Baxter representative, and Deb Reichen stated that while she knew decedent in a business capacity, she was not scheduled to meet with her that day.

It is undisputed that a collision occurred between Hudson's Toyota and a semi-trailer that was parked on the shoulder of I-57. When State Trooper Tarro arrived at the scene, the driver of the Toyota was still in the vehicle and the passenger was lying on the highway. Tarro indicated that he had passed the area about an hour and a half prior and at that time three triangular road flares were set up behind the trailer. According to him, the abandoned truck was not a road hazard. The weather was clear and it was daylight.

Upon his arrival at the scene of the accident, Trooper Tarro found evidence that the hazard warnings had been in place; he found their bases. However, now only bits and pieces of the markers were scattered behind the truck. He could not determine whether Hudson's vehicle was the one that had run over the markers. He did not measure the distance between the bases of the markers and the rear of the truck. However, he measured the distance between the left side of the trailer and the traveled portion of the highway as three feet nine inches. Tarro did not observe any skid marks at the scene and testified that, if he had, he would have recorded them. The shoulder width is 10 feet wide and is divided from the traveled portions of the highway by a painted white line. Both surfaces are asphalt, although the shoulder may be a little darker. Payne, the truck's driver, testified in his deposition that he inspected the semi-trailer before he began driving it to Champaign on July 15, 1990. He left Elkhart, Indiana, around 6 p.m., stopped at a truck stop on I-57 outside of Chicago around midnight, and left there about an hour later. Up to this point, Payne did not notice anything out of the ordinary about the truck. About 3 a.m. Payne pulled the truck over to the side of the road because he blew the engine. He set three plastic triangle reflectors behind the truck. He stated that he placed them based on Illinois Department of Transportation regulations: 10 feet, 100 feet,

and 200 feet behind the truck angled toward the highway, "eyeball[ing] the distance." He turned off the hazard lights because he did not want to run down the battery.

Payne returned to the truck at about 9:25 a.m. after the accident had occurred. When he arrived, he did not see the reflectors and had no knowledge of what happened to them. According to him, the truck was in the same position as when he left it and all four wheels of the trailer were on the shoulder. The first issue on appeal is whether the exclusivity provision of the Act bars plaintiff's negligence action against Baxter and Hudson.

The Act provides in pertinent part:

"§ 5. (a) No common law or statutory right to recover damages from the employer, *** or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." (Ill. Rev. Stat. 1989, ch. 48, par. 138.5 (now 820 ILCS 305/5 (West 1992)).)

Section 7 relates specifically to death benefits and provides compensation only to parent(s) who are totally or partially dependent on the deceased employee. (See Ill. Rev. Stat. 1989, ch. 48, pars. 138.7(b), (c) (now 820 ILCS 305/7(b), (c) (West 1992)).) Paragraph (f) provides burial expenses for the "person or persons incurring the expense of burial." Decedent's next of kin received nothing under (b) or (c) and the administrator received burial expenses.

The Act was designed to balance the interests and rights of both the employee and the employer. Under the Act, an employer incurs liability, without fault, to an employee who is accidentally injured on the job. In exchange, the employee loses the right to bring any common law or statutory cause of action against the employer. (*Meerbrey v. Marshall Field & Co.* (1990), 139 Ill. 2d 455, 462, 564 N.E.2d 1222, 1225.) The Illinois Supreme Court recognizes four exceptions to the exclusivity rule: (1) the injury was not accidental; (2) the injury did not arise from the employment; (3) the injury was not received during the course of the employment; or (4) the injury was not compensable under the Act. *Meerbrey*, 139 Ill. 2d at 463, 564 N.E.2d at 1226.

Plaintiff claims that because the next of kin's injuries are not compensable under the Act, the claim is not subject to the exclusivity provision and, therefore, the common law action is not barred. Defendant conversely argues that the Act is the exclusive remedy and that there is no exception for noncompensable injuries.

Under the broad type of statute such as Illinois', suits by parents and next of kin are generally barred.

> "In rare and unusual circumstances, however, it may be possible to show that the injury to the spouse or parent was such an independent violation of duty that its abrogation was not contemplated by the exclusive remedy provision." (2A A. Larson, Law of Workmen's Compensation § 66.00, at 12—88 (1994) (hereinafter Larson).)

(See also Larson § 66.30 (outlining the rare instances in which exceptions have applied).) Courts in other jurisdictions have, almost unanimously, barred common law suits by next of kin. (Larson § 66.21, at 12—89 n.42, at 12—103.) A majority of these jurisdictions bar the action even where the nondependent parent receives no compensation in place of the common law or statutory death action rights. Larson § 66.24, at 12—110 n.47; § 65.54 n.34.3, at 12—83.

None of the cases cited and relied on by the parties specifically address whether a parent who is not dependent on the deceased employee and who otherwise receives no benefits under the Act can maintain a wrongful death action. Relying on *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, *Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 408 N.E.2d 198, and *Fregeau v. Gillespie* (1983), 96 Ill. 2d 479, 451 N.E.2d 870, plaintiff asserts that the claimed injuries fall within an exception to the exclusivity rule because the injuries are "not compensable" under the Act.

Plaintiff relies on *Kelsay* for support that suits are barred to the extent recovery is "provided by the Act." He argues that since the next of kin's injuries are not provided for in the Act, any suit by them is not barred. Plaintiff next cites *Fregeau* for authority that if injuries are not compensable under the Act and if plaintiff has not received benefits, a common law suit will not be barred. In *Fregeau*, the court held that plaintiff was barred from bringing an action against his employer because none of the four exceptions existed. The court also held that both plaintiff's suit for injuries and his wife's for loss of consortium were barred even though the Act did not allow compensation for loss of consortium.

In *Collier*, the court held that emotional distress is a compensable injury under the Act and, therefore, plaintiff's cause of action against the employer and coemployee for intentional infliction of emotional distress was barred.

Defendant on the other hand argues that the Act provides the exclusive remedy. He relies on *Moushon v. National Garages, Inc.* (1956), 9 Ill. 2d 407, 411, 137 N.E.2d 842, 844 (if injury itself within confines of Act, common law suit barred even though specific element

of damage not compensable), *appeal dismissed* (1957), 354 U.S. 905, 1 L. Ed. 2d 1425, 77 S. Ct. 1294; *Duley v. Caterpillar Tractor Co.* (1969), 44 Ill. 2d 15, 253 N.E.2d 373 (nondependent husband's wrongful death action barred); *Bloemer v. Square D Co.* (1972), 8 Ill. App. 3d 371, 290 N.E.2d 699 (wife's loss of consortium claim barred, no vested right to common law action); and *Block v. Pielet Brothers Scrap & Metal, Inc.* (1983), 119 Ill. App. 3d 983, 457 N.E.2d 509 (same), as well as cases from other jurisdictions, as authority for a finding that even if plaintiff is not entitled to compensation under the Act, a common law action is barred.

The two cases most on point are *Duley* and *Dobrydnia v. Indiana Group, Inc.* (1991), 209 Ill. App. 3d 1038, 568 N.E.2d 1002, *appeal denied* (1991), 139 Ill. 2d 594, 575 N.E.2d 912. In *Duley*, the Illinois Supreme Court held that a nondependent husband could not bring a wrongful death action for the death of his wife. Plaintiff's wife was killed during the course of her employment and, under the Act, plaintiff received $500 in burial expenses. Subsequently, he filed a wrongful death action to recover damages. The trial court dismissed, finding that the action was barred by the exclusivity provision of the Act. The Illinois Supreme Court agreed. Plaintiff argued that the wrongful death action was not barred because the Act did not provide compensation for a spouse, such as himself, who was not dependent on the deceased employee. The court rejected this argument stating that the wife was an employee covered by the Act and the husband was paid some compensation under the Act as a result of the death, *e.g.*, burial expenses. The court also found this result consistent with the legislative purpose underlying the statute.

In *Dobrydnia*, the court denied the wife's loss of consortium claim as it was barred because a spouse is entitled directly or indirectly to benefits under the Act. Plaintiff argued that she was not making a claim for her husband's injuries but a separate claim based on her own injuries. The court found that the purpose of section 5(a) was "to bar any and all claims that arise out of the injury to the employee. While the spouse's loss of consortium claim may be an independent claim for damages, it arises out of the employee's injury." *Dobrydnia*, 209 Ill. App. 3d at 1040, 568 N.E.2d at 1003.

■ In the case before us, plaintiff makes the same arguments that were made and rejected in *Duley* and *Dobrydnia*. We agree with those decisions. Even though the claimed injuries may not be compensable under the Act because the next of kin were not dependent on decedent and the injuries may be independent, they nonetheless arise out of decedent's death and are barred by section 5. Therefore, the trial court properly granted Baxter's and Hudson's motions to dismiss.

The second issue is whether a genuine issue of material fact exists as to whether Hudson was within the scope of her employment at the time of the accident or on a "frolic."

Summary judgment is proper when the pleadings, depositions, affidavits, admissions, and other matters on file demonstrate there is no genuine issue of material fact and movant is entitled to judgment as a matter of law. (735 ILCS 5/2—1005(c) (West 1992).) A reviewing court examines the propriety of summary judgment *de novo*. (*Delaney v. McDonald's Corp.* (1994), 158 Ill. 2d 465, 467, 634 N.E.2d 749, 750.) The court must construe the evidence strictly against the movant and liberally in favor of the opponent. *Gilbert v. Sycamore Municipal Hospital* (1993), 156 Ill. 2d 511, 518, 622 N.E.2d 788, 792.

The pivotal question in this case is whether plaintiff adequately supported allegations that Hudson was on a "frolic" at the time of the accident. Generally, when course of employment is at issue, summary judgment is inappropriate. (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 359, 543 N.E.2d 1304, 1308.) Only if no reasonable person could conclude from the evidence that an employee was acting within the course of employment should a court hold as a matter of law that the employee was not so acting. *Boehmer v. Norton* (1946), 328 Ill. App. 17, 24, 65 N.E.2d 212, 215.

Illinois courts have not precisely defined "scope of employment" but instead apply a broad range of criteria adopted from the Restatement (Second) of Agency section 228. Illinois long ago recognized a distinction between "frolic," where the employee's personal business is seen as unrelated to employment, and a "detour," where the employee's deviation for personal reasons is nonetheless seen as sufficiently related to the employment. (*Pyne*, 129 Ill. 2d at 361, 543 N.E.2d at 1309.) An employer will not necessarily be relieved of liability for an employee's negligence even if the employee was combining personal business with the employer's business:

> "Where an employee's deviation from the course of employment is slight and not unusual, a court may find as a matter of law that the employee was still executing the employer's business. (*Boehmer v. Norton* (1946), 328 Ill. App. 17, 21, 24.) Conversely, when a deviation is exceedingly marked and unusual, as a matter of law the employee may be found to be outside the scope of employment. (*Boehmer*, 328 Ill. App. at 21; see 57 C.J.S. *Master & Servant* § 617(a)(3), at 414 (1948).) But in cases falling between these extremes, where a deviation is uncertain in extent and degree, or where the surrounding facts and circumstances leave room for legitimate inferences as to whether, despite the deviation, the employee was still engaged in the employer's business, the question is for the jury." (*Pyne*, 129 Ill. 2d at 361, 543 N.E.2d at 1309.)

Where the employee is a traveling employee, the test for course of employment is "the reasonableness of the conduct in which the employee was engaged and whether it might normally be anticipated or foreseen by the employer." *Bailey v. Industrial Comm'n* (1993), 247 Ill. App. 3d 204, 208, 617 N.E.2d 305, 308.

A review of Illinois case law demonstrates the leniency Illinois courts afford traveling employees. In *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 543 N.E.2d 1304, the employee drove his own car from his work in Streamwood to a test in Rockford. Some $2^1/2$ hours after the test, he was involved in a fatal accident. At the time, he was intoxicated. The record contained no evidence of the employee's activities between the end of the test and the time of the accident. His wife, however, testified that he told her he planned to stay and study for a test the next evening. The decedent was not required to report to work until the next morning and there was no evidence that his employer had instructed him that he must return home immediately following the test. No evidence was presented as to when the decedent became intoxicated. The court noted that the decedent may have stopped en route home to get food and at that time had several drinks. The record showed that at the time of the accident, the employee was not on the direct route to his home. However, his former mother-in-law testified that he was familiar with the back roads because he had lived in the area and, therefore, may have been taking a shortcut. Finding that the evidence conflicted and reasonable persons could differ as to whether decedent was in the scope of his employment at the time of the accident, the court held that summary judgment was not proper. In *Hood v. Industrial Comm'n* (1987), 158 Ill. App. 3d 81, 510 N.E.2d 908, *appeal denied* (1987), 117 Ill. 2d 543, 517 N.E.2d 1086, the court held that the employee was within the scope of his employment at the time of the accident even though he had friends in the car and had made personal stops. On the day of the accident, the employee was instructed by his employer to obtain a repair estimate for a vehicle. He stopped at a repair shop in the morning but was told to return that afternoon. Earlier in the week, his employer had told him to fill nitrous oxide tanks the next time he went to St. Louis. At about 1 p.m., the employee picked up a couple of friends and the group proceeded to St. Louis. While the tanks were being filled, the passengers in the car viewed "Bigfoot," a huge truck. The group then went to a music store to pick up one of the passenger's drums. They stopped briefly for lunch, then headed back to the repair shop. During the trip back, they were involved in an accident. The arbitrator found that the employee was within the scope of his employment at the time of the accident. The employer argued

that he was not because the trip was for personal purposes, *e.g.*, to see "Bigfoot" and to pick up the drum. The court affirmed the arbitrator finding that the personal stops were "slight[ ] deviat[ions]" which were "inconsequential, reasonable, and foreseeable" as the company rules allowed the employee to carry passengers and to chose his own routes for trips.

Conversely, in *Bailey v. Industrial Comm'n* (1993), 247 Ill. App. 3d 204, 617 N.E.2d 305, the court upheld the arbitrator's finding that the employee was not within the scope of his employment at the time of the accident. Decedent's wife brought an action for the death of her husband. Her husband was assigned to a job in Texas and was killed in an accident around 11:30 p.m. At the time, he was heading in the opposite direction of his apartment and was intoxicated. The arbitrator found that decedent was not in the scope of his employment based on the following evidence. The decedent had completed his job assignment prior to that date. He had attended a party that day which did not further his employer's interests and of which his employer had no knowledge. At the time of the accident, he was traveling in the opposite direction of his apartment and of his new assignment. He had a high blood-alcohol content. According to the court, there was no indication of why the decedent was traveling in this direction or the purpose of his travels.

In this case we have only circumstantial evidence of the events prior to the accident. Circumstantial evidence must show a probability of the existence of the fact, and the circumstantial facts must be of such nature and so related as to make the conclusion reached the more probable. *Pyne*, 129 Ill. 2d at 369, 543 N.E.2d at 1313.

The essential facts in this case are undisputed. The record shows that Hudson and decedent were traveling employees. They were visiting various hospitals downstate and at the time of the accident were between appointments. Plaintiff has the burden of showing facts which demonstrate that Hudson was on a frolic at the time. The only evidence offered was a statement in Hudson's deposition that the two were going to have lunch with an "old friend." Plaintiff infers from this that the two were on their way to Champaign for lunch. According to plaintiff, this is the only reason they would have passed Route 24. Plaintiff also provided three affidavits indicating that none of the affiants were "old friends" of either Hudson or decedent. Hudson rebutted her statement in an affidavit where she averred that the reference to an "old friend" was to a blood bank supervisor. While the blood bank supervisor indicated that she had no plans with Hudson and decedent for lunch, Hudson and decedent may have planned to ask her out once they arrived at the hospital.

■ As to the fact that Hudson and decedent were not on the most direct route to Peoria, *Pyne* implies that a traveling employee need not take the most direct route. Hudson and decedent were on a route which, although somewhat out of the way, led them to Peoria. The deviation, if any, was slight particularly given the fact that Hudson and decedent were traveling employees and were heading in the direction of their next appointment. Therefore, as a matter of law no genuine issue of material fact exists.

The third issue plaintiff presents is whether a genuine issue of material fact exists as to whether Link and Payne are liable for the accident. Plaintiff argues that reasonable persons could differ as to whether abandoning a semi-truck on the highway proximately caused the accident and, therefore, summary judgment was improper.

Link and Payne rely on several cases for the proposition that they are not liable for the accident. (*Imes v. Koenig* (1992), 227 Ill. App. 3d 77, 590 N.E.2d 1048; *Bogovich v. Nalco Chemical Co.* (1991), 213 Ill. App. 3d 439, 572 N.E.2d 1043; *Henderson v. Beckman Texaco* (1991), 213 Ill. App. 3d 1054, 573 N.E.2d 369; *P.A.M. Transport, Inc. v. Builders Transport, Inc.* (1991), 209 Ill. App. 3d 889, 568 N.E.2d 453, *appeal denied* (1991), 139 Ill. 2d 598, 575 N.E.2d 917; *Salinas v. Werton* (1987), 161 Ill. App. 3d 510, 515 N.E.2d 142; *Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, 467 N.E.2d 1153.) Plaintiff relies on *Smith v. Armor Plus Co.* (1993), 248 Ill. App. 3d 831, 617 N.E.2d 1346, for authority that Link and Payne are liable because more than one proximate cause may be attributable to injuries. Proximate cause is one which produces injury through a natural and continuous chain of unbroken events. It requires a twofold inquiry: "(1) whether the defendant's negligence was a cause in fact of the injury; and (2) whether the defendant's negligence was sufficiently closely connected with the injury so that, given considerations of justice or policy, the defendant should be held liable for the injury." (*Smith*, 248 Ill. App. 3d at 840, 617 N.E.2d at 1353.) Plaintiff has the burden of proof, and summary judgment is only proper if no reasonable differences can be drawn from the undisputed facts.

In *Smith*, the court found that it was reasonably foreseeable, given the serious weather conditions, that an abandoned vehicle, without warning devices, may be struck. Therefore, a question of fact existed as to whether defendant was a proximate cause of the accident. Decedent was killed when the car in which he was a passenger drove off the highway and onto the shoulder of the road, hitting a disabled, abandoned truck. Plaintiff alleged and testified that he would not have hit the truck if he had been adequately warned of its presence. Defendant stopped the truck on the shoulder of the road

at approximately 3 or 4 p.m. because it overheated. He testified that the truck was completely off the roadway. He turned on the flashers but when he left the site, he turned them off. He did not place warning signals behind the truck because he did not have any. The weather was snowy and portions of the roadway were icy. There were multiple accidents along the highway due to the weather conditions. At approximately 12:40 a.m., plaintiff struck the truck. The evidence showed that at this point of the road, it was straight, level and the surface was dry and clear. The trooper responding to the scene found no skid marks. According to plaintiff, defendant was negligent because he left the truck abandoned for an unreasonable length of time and because he failed to activate any warning devices in circumstances where it was necessary: the truck was white, it was snowing out, and the area was not well lit. The court found that there was substantial evidence that defendant violated numerous safety statutes in failing to warn of the truck's presence and, therefore, a triable issue of fact existed.

The *Smith* court relied on *Kinsch v. Di Vito Construction Co.* (1964), 54 Ill. App. 2d 149, 203 N.E.2d 621, in which the court found that there was sufficient evidence to support a jury finding that defendant was the proximate cause of the injury. In *Kinsch*, defendant left a cement block 4 feet high, 8 to 10 feet wide, and 8 inches thick, approximately three to four feet from the edge of the roadway. The block had remained there for two to four weeks without lighting or any warning devices.

■ While we agree that more than one cause may contribute to an accident, based on the pertinent factors outlined in *Smith* and *Kinsch*, we find as a matter of law that Link and Payne are not liable because the injury, given the warnings and circumstances, was not reasonably foreseeable. The record shows that Payne parked the truck completely off the roadway. It was not interfering with or obstructing traffic. Payne took the precautions required by law in placing the warning reflectors behind the truck. He set them out as prescribed in Department of Transportation regulations. (See 625 ILCS 5/12—702(c) (West 1992) (flashers required only until other emergency signals placed).) While plaintiff argues that the reflectors were not behind the truck at the time of the accident, there is absolutely no evidence in the record to support this contention. According to the officer's testimony, he observed the reflectors an hour and a half before the accident. Moreover, the weather was clear and there is no evidence that the truck was not visible. Because of its size, location and the warning devices, Hudson should have observed the truck prior to striking it. The facts in the case before us are quite

different than those in *Smith* and *Kinsch* and require a different result.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

COUSINS, P.J., and WOLFSON,[1] J., concur.

----

[1]Justice Wolfson replaced Justice Giannis on the panel; he has read the briefs, the petition for rehearing and listened to the tape of oral argument before concurring in the disposition of this modified opinion.