**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190573-U

Order filed July 28, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| MARLENE THOMAS, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-19-0573 |
| | ) | Circuit No. 17-L-1067 |
| MICHAEL D. WALDEN, | ) | |
| | ) | Honorable John C. Anderson, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Justices Holdridge and O'Brien concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The circuit court did not err in granting summary judgment in favor of
                defendant.

¶ 2     This matter arises from a collision between two motor vehicles and the resulting personal

injury claim by plaintiff, Marlene Thomas. Defendant, Michael Walden, alleged in his motion for

summary judgment that Thomas's claim was time barred by the Local Governmental and

Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/8-101(a) (West 2016)), owing

to the fact that he was within the scope of his employment with Will County when the accident

occurred. Thomas, in her resistance, argued that genuine issues of material fact regarding whether Walden was within the scope of his employment with Will County precluded summary judgment. The circuit court granted summary judgment in favor of Walden. The issue presented for our review is whether there are genuine issues of material fact as to whether Walden was within the scope of his employment with the county when the accident occurred. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On March 7, 2016, Walden was driving a 2009 Jeep Patriot owned by Will County. At approximately 8:46 a.m., Walden was involved in an accident wherein he sideswiped a vehicle driven by Thomas. Walden changed lanes and struck Thomas in the process. Both Walden and Thomas were driving westbound on Route 30, also known as Cass Street, in Joliet Township.

¶ 5        Officer Kevin O'Boyle of the Joliet Police Department responded to the accident. O'Boyle submitted to a deposition in this matter. His testimony was as follows. O'Boyle had been with the Joliet Police Department for over 26 years. At the time of the accident, Walden and Thomas were traveling westbound on Cass Street near the intersection of Harwood Street. The crash occurred east of the Harwood Street intersection when Walden changed lanes and struck Thomas. O'Boyle issued Walden a citation for improperly changing lanes pursuant to the Motor Vehicle Code. 625 ILCS 5/11-709 (West 2016). Following the conclusion of his interactions with the parties, O'Boyle prepared a crash report that is included in the record. O'Boyle could not recall if Walden stated he was working as an employee of Will County when the crash occurred. O'Boyle noted that even if Walden had mentioned his employment with the county, it would not be something he would have included in his report. Walden did not tell O'Boyle that he intended to turn onto Harwood Street. O'Boyle stated he would have noted this comment in his report if Walden had stated as much.

¶ 6       Roughly one month after the accident, Thomas executed a settlement agreement with Walden, the county, and the county's claims administrator releasing her property damage claims related to the accident in return for $2880.

¶ 7       On December 21, 2017, approximately two years after the accident, Thomas filed a claim against Walden seeking damages in excess of $50,000 for bodily injuries she sustained in the accident. In turn, Walden filed a motion for summary judgment contending that at the time of the accident, he was acting in the course and scope of his employment with Will County. Accordingly, the applicable statute of limitations on Thomas's claim was one year as laid out by the Act. See 745 ILCS 10/8-101(a) (West 2016). Given that Thomas filed her claim outside of one year from the accident, Walden requested that the court dismiss the action.

¶ 8       Walden attached an affidavit to his motion for summary judgment. In the affidavit, Walden swore that Will County was his employer on the date of the accident and that he "was assigned to conduct various residential plumbing inspections." His job duties required him to drive to and between the sites to conduct plumbing inspections. Further, at the time of the accident with Thomas, he was "traveling between inspection sites." Moreover, Walden swore he "was not engaged in any personal errands or any activity for my own personal benefit or gain" when the accident occurred.

¶ 9       Will County submitted documents pursuant to a subpoena from Thomas. The documents included a list of inspection sites visited by Walden on the day of the accident which included 2328 W. Offner, Beecher, Illinois; 106 Anderson Avenue, Joliet, Illinois; 1551 Elgin Avenue, Joliet, Illinois; and 718 Prairie Road, New Lenox, Illinois. Also provided, were the corresponding inspection documents for the above locations, as well as sign-in sheets used by the Will County department that employed Walden. Of note, the sign-in sheets consisted of two sequentially

numbered pages with dates written into boxes and signatures placed next to the dates. However, there is a significant gap of dates where employees did not sign in. Specifically, there are no signatures after January 26, 2016, up to March 11, 2016.

¶ 10     Walden also submitted to a deposition in this matter. Walden is currently retired but was a Union 130 plumber for approximately 17 years and worked for Will County for approximately two years. The county employed Walden as a plumbing inspector. His duties required him to travel to work sites to ensure contractors on both residential and commercial projects were complying with state and local plumbing code. The county assigned Walden a vehicle from the county fleet. His assigned vehicle was a 2009 Jeep Patriot adorned with decals on the side and back of the vehicle depicting the seal of Will County. Walden's normal practice would be to drive his personal vehicle to the executive building to pick up his work computer and county vehicle and then proceed on with his day.

¶ 11     Walden would receive the locations of inspections he needed to complete on the day prior. The county did not mandate an order for him to conduct these inspections. It was not his practice to take a lunch during the workday or take the county vehicle to get breakfast in the morning before he began inspections. While he did not have to "punch a clock," Walden did state that the county, at some point, provided a sign-in sheet, though he could not remember if this practice began before or after the accident. Opposing counsel presented to Walden a Will County sign-in sheet containing dates surrounding the day of the accident. While Walden was able to identify his signature on certain dates, there were no sign-in entries for the day of the accident from Walden or anyone else. When asked why there were no sign-ins for the day of the accident, Walden responded, "No idea," later commenting "It looks like there's a page missing."

¶ 12   Walden could not remember his schedule on the day of the accident but knew the accident occurred while he was travelling from the Will County executive building to the first inspection of the day located on a side street off of Cass Street. He stated that he had his own global positioning system (GPS) and he would follow its instructions to the various inspection locations. He was following the GPS instructions at the time of the collision. He believed that he was not far from the inspection site he intended to visit when the accident occurred, possibly just 10 minutes away given it was on a side street of Cass Street. After the accident, he proceeded to the inspection site he was en route to.

¶ 13   Thomas responded to Walden's motion for summary judgment by arguing that genuine issues of material fact as to whether Walden was within the scope and course of his employment with Will County precluded summary judgment. Specifically, Thomas argued that Walden's conflicting accounts of whether he was travelling between inspection sites or on his way to his first inspection of the day created a genuine issue of material of fact. Further, the fact that Walden could not remember the address of the inspection he was travelling to at the time of the accident and the averment that the GPS device used by Walden would "never" have him traveling on Cass Street to reach the site he visited after the accident created genuine issues of material fact. Moreover, Thomas pointed to the fact that Walden's signature was absent from the county sign-in sheet on the day of the accident.

¶ 14   Attached to Thomas's resistance were directions provided by "Google maps" using map data from 2019 that showed the fastest route of travel from the Will County executive building to the Elgin Avenue inspection site and the fastest route from the Anderson Avenue inspection site to the Elgin Avenue site. Thomas alleged the fastest route provided by these maps would not have put Walden on Cass Street headed westbound.

¶ 15        After a hearing, the circuit court took the matter under advisement and issued an order finding that Thomas filed the action outside the one-year limitations period of the Act. Thus, the circuit court granted summary judgment in favor of Walden.

¶ 16        Thomas appeals.

¶ 17                                    II. ANALYSIS

¶ 18        Thomas contends that there are genuine issues of material fact as to whether or not Walden was within the scope of his employment with Will County at the time the accident occurred, rendering the circuit court's disposition of this matter via summary judgment improper. She argues the following facts preclude summary judgment on her claim: (1) Walden's signature is absent from the sign-in sheet on the day of the accident, (2) Walden's deposition testimony conflicts with his sworn affidavit, and (3) the GPS unit used by Walden would have "never" put him westbound on Cass Street to reach the inspection site he visited after the accident.

¶ 19        Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). When determining whether summary judgment is appropriate, we view the pleadings, depositions, and admissions on file, together with the affidavits in the light most favorable to the nonmoving party. *Perry v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶ 30. While a nonmoving party need not prove his or her claim at the summary judgment stage, it is the "put up or shut up" moment in a suit and the nonmoving party must present some factual basis to support his or her claim. *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 14; *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002). "Mere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville*

*Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). We review the lower court's grant of summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 20    In order to recover against a county employee acting within the scope of employment, the plaintiff must file suit within one year, even if seeking to recover against the county employee only in an individual capacity. See 745 ILCS 10/8-101(a) (West 2016) ("No civil action * * * may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued."); see also 745 ILCS 10/1-207 (West 2016) (stating counties are a "local public entity"). The purpose of this one-year limitation is to "encourage early investigation into a claim against a local governmental entity when the matter is still fresh, witnesses are available, and conditions have not materially changed." *Hubble v. Bi-State Development Agency of Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 279 (2010).

¶ 21    Of course, the limitations period of section 8-101(a) of the Act does not apply when the employee is engaged in conduct that takes the individual outside the scope of their employment with the county.

> " 'Where an employee's deviation from the course of employment is slight and not unusual, a court may find as a matter of law that the employee was still executing the employer's business. [Citation.] Conversely, when a deviation is exceedingly marked and unusual, as a matter of law the employee may be found to be outside the scope of employment.' " *Laird v. Baxter Health Care Corp.*, 272 Ill. App. 3d 280, 288 (1995)) (quoting *Boehmer v. Norton*, 328 Ill. App. 17, 21, 24 (1946)).

¶ 22 We hold that there are no genuine issues of material fact as to whether Walden was within the scope of his employment with Will County. Ergo, the circuit court did not err by granting summary judgment in favor of Walden.

¶ 23 Initially, the contention that the absence of Walden's signature from the county designated sign-in sheet on the day of the accident creates a genuine issue of material fact is unpersuasive. As Walden pointed out in his deposition and his counsel points out in the briefs, not only was Walden's signature missing but the whole day and surrounding days of sign-ins were missing. There are no signatures of any county employee on the day in question. To point to the absence of Walden's signature and claim it creates a genuine issue of material fact as to whether or not he was within the scope of his employment with the county at the time of the accident is disingenuous at best when there is apparently no sign-ins whatsoever for that day.

¶ 24 The argument that the conflict between Walden's affidavit and deposition creates a genuine issue of material fact is equally unavailing. Walden submitted an affidavit in support of his motion for summary judgment stating he was in the course and scope of employment of Will County and was not conducting any activities for his personal benefit. Thomas did not provide a counter-affidavit to rebut these allegations. As the lower court pointed out during the hearing on the motion for summary judgment, "I understand there is some inconsistencies, but how do they make a difference[,]" and "I'm just trying to figure out how it's material?" We echo those sentiments. While there may be some inconsistency in whether Walden was traveling to perform the first inspection of the day or traveling to a subsequent inspection, he still would have been within the scope of his employment with the county. Thomas provides no evidence to the contrary. See *Fields v. Schaumburg Firefighters' Pension Board*, 383 Ill. App. 3d 209, 224 (2008) (noting a court must

accept an affidavit provided in support of a motion for summary judgment "if it is uncontradicted by counteraffidavit or other evidentiary material").

¶ 25    Additionally, the fact that Walden did not remember what inspection site he was traveling to does not create a genuine issue of material fact. Walden completed the affidavit and deposition almost 2½ years after the accident. He had no specific recollection as to which site he was headed to or his route of travel. This is the explicit reason for the one-year limitations period in these cases, so an investigation can be conducted "when the matter is still fresh." *Hubble*, 238 Ill. 2d at 279. The record shows that Walden was only a third of a mile away from an inspection site. He was in his county-assigned vehicle when the accident occurred. According to county records, Walden completed an inspection at that site, Elgin Avenue, on the day of the accident. The county records also show that Walden completed multiple plumbing inspections on the day in question.

¶ 26    Thomas provides nothing but speculation, conjecture, and guesswork as to what Walden was doing when the accident occurred if he was not within the scope of his employment. Exemplifying Thomas's supposition is the following exchange in the court below,

> "THE COURT: Let me just interrupt you for one second. Let me ask you, is there anything in the record that actually identifies what he was doing if he wasn't going to or from an inspection?
>
> MR. PAYONK [(PLAINTIFF'S ATTORNEY)]: No, Judge.
>
> THE COURT: There is nothing in the record suggesting he was getting lunch, he was getting his oil changed, he was stopping to pick up his dog or his dry cleaning, nothing?
>
> MR. PAYONK: That's correct. But he controls that, understand. So from my perspective—

THE COURT: Right. That's why you test his assertions in the context of a deposition, but you weren't able to extrapolate anything from him that would suggest he was doing something other than going to and from an inspection.

MR. PAYONK: That's correct."

Thomas presents no evidence that Walden was outside the scope of his employment with Will County when the accident occurred.

¶ 27    Nonetheless, Thomas argues that the "Google maps" attached to her motion resisting summary judgment creates a genuine issue of material fact because Google would have "never" put Walden westbound on Cass Street to reach the inspection site nearest the accident. We disagree.

¶ 28    Walden was not using "Google maps" when traveling to the inspection sites. He stated during his deposition that he had his own GPS unit that he would follow. Thomas states that Walden's GPS unit would not have him traveling westbound on Cass Street either. This is mere speculation by Thomas. There is no evidence in the record as to what course of travel Walden's GPS unit would have suggested, instead there are only maps promulgated by Google using map data from 2019.

¶ 29    Further, Thomas cites no authority stating that Walden had to take the fastest or most direct route as depicted in the "Google maps" provided while Walden provides authority to the contrary. See *Laird*, 272 Ill. App. 3d at 291 (noting caselaw "implies that a traveling employee need not take the most direct route," and no genuine issue of material fact existed when the traveling employee was headed to the next appointment even if the route was "somewhat out of the way"). Thomas

- 10 -

had the opportunity to ask Walden about his route of travel during the deposition but did not. She now seeks to support her claims through speculation, conjecture, and guess.

¶ 30    When viewing the record in the light most favorable to Thomas, she has failed to present a factual basis sufficient to support her claim. Accordingly, the circuit court did not err in its judgment.

¶ 31    III. CONCLUSION

¶ 32    For the foregoing reasons, we affirm the judgment of the Will County circuit court.

¶ 33    Affirmed.