**Kimberly JONES, Plaintiff,**

v.

**Joel GATZAMBIDE and Levy Security Consultants Limited, Defendants.**

**No. 95 C 5197.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 16, 1996.

---

Ronald Scott Tulin, Chicago, IL, for plaintiff.

Robert Johns Mignin, Amy P. Hartman, Theodore C. Stamatakos, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendants.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court are Defendant Levy Security Consultants Limited's (LSC) motions for summary judgment and for sanctions. For the following reasons, the motion for summary judgment is granted and the motion for sanctions is denied.

## I. BACKGROUND

### A. Local Rule 12

Plaintiff Kimberly Jones ("Jones") filed a claim for hostile work environment sexual harassment and a "state claim" against LSC pursuant to 42 U.S.C. § 2000e ("Title VII").[1] As a threshold matter, the

---

1. The court notes that Jones has also named Joel Gatzambide, Jones' supervisor, as a second Defendant. It appears from the clerk's docket that he has neither filed an appearance nor answered the Complaint. It is now well-established that individual supervisors cannot be held liable under Title VII. See Williams v. Banning, 72 F.3d 552, 554 (7th Cir.1995). As such, Jones cannot state a hostile work environment claim against Gatzambide.

court addresses the issue of which facts it will rely upon for purposes of its summary judgment analysis.

■ LSC filed a Local Rule 12(M) statement with its motion for summary judgment. Plaintiff Kimberly Jones' response to that motion bears no resemblance to that contemplated by Local Rule 12(N). The Seventh Circuit has repeatedly upheld the strict enforcement of local rules regarding summary judgment. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir.1994). "District courts are not obliged in our adversary system to scour the record looking for factual disputes." *Id.* (citations omitted). Accordingly, pursuant to Local Rule 12, LSC's uncontested version of the facts is deemed admitted. *See* Local General Rule 12.[2]

### B. Uncontested Facts

Jones worked for LSC as a Public Security Officer and Assistant Watch Commander from June 17, 1994, until October 24, 1994. At all times, she worked at Navy Pier. Joel Gatzambide ("Gatzambide") worked for LSC in a supervisory capacity. Jones is an African–American female and Gatzambide is a caucasian male. At the beginning of each shift, Navy Pier's security staff met in a "public security office" on Navy Pier's third floor. During these meetings, either the Assistant Watch Commander or Watch Commander took roll call and ensured that each officer was properly attired.

On October 15, 1994, during a pre-shift meeting, Gatzambide and Jones were seated next to each other at a round table, along with several other officers. As the meeting ended and, while another officer remained seated at the table, Gatzambide asked Jones how she would feel about dating a white person. She responded, "What are you talking about? I'm not interested."

Immediately following the meeting, Jones, Gatzambide, and the other officers left the security office as a group, and walked approximately sixty feet to an elevator. During the walk and the elevator ride, Gatzambide "stared" at Jones. Jones testified at her deposition that she could not remember where Gatzambide was positioned in relation to her as they walked or during the elevator ride. She also could not recall the manner in which he was staring at her (i.e., whether he was looking in her eyes or at her body). The staring made Jones feel "uncomfortable." When the elevator reached the Navy Pier mall, all officers dispersed and commenced their duties.

Later, during the same shift, Gatzambide stood approximately two feet from Jones as she stood at a railing overlooking the shopping area. He told her that he had a crush on her, and that he was going to "grab [her] face and kiss [her]." Gatzambide made no attempt to kiss Jones and did not touch her in any way. Jones told Gatzambide that she was "not interested" and that he made her "uncomfortable."

Jones testified at her deposition that the above conduct constitutes the entire basis of her sexual harassment claim. At her deposition, Jones was asked, "Is there anything else verbal or physical that Joel Gatzambide did to you that you say constitutes sexual harassment?"; she responded, "No, that was it." (Jones Dep. 87.)

Jones had not been scheduled to work for the following three days. Upon her return to work on October 18, 1994, she met with Luis Serrano ("Serrano"), LSC's Navy Pier Deputy Director, and complained about Gatzambide's conduct. Serrano immediately phoned Abdul Kahn ("Kahn"), LSC's Navy Pier Director. Kahn joined Serrano and Jones posthaste and listened to Jones' complaint.

Kahn then immediately phoned LSC's human resources department and drove Jones to LSC's corporate headquarters, so that she might meet with members of the human resources staff. There, human resources personnel met with Jones, discussed her complaint, gave her the day off, appointed an investigator, and told her that the investigator would contact her to schedule an interview within twenty-four hours. When the investigator phoned Jones at home to arrange an interview, Jones refused to speak with the investigator and stated that she had

**2.** In support of their 12(M) statement of fact, LSC relies entirely upon Jones' own deposition.

an attorney, though she refused to disclose the attorney's name.

After October 18, 1994, Jones worked, at most, two more days for LSC.

As part of its investigation, LSC interviewed Gatzambide and ultimately issued him a written reprimand.

### C. Additional Facts

Despite Jones' complete disregard for Local Rule 12, the court has read her statement of facts. That statement contains multiple assertions which are completely unsupported by evidence. None of her assertions are supported by deposition testimony, sworn affidavit, or verified complaint. On LSC's motion, the court strikes all of the unsupported allegations. *See Rosemary B. on Behalf of Michael B. v. Board of Educ. of Community High School Dist. No. 155*, 52 F.3d 156, 158–59 (7th Cir.1995) (striking an entire response for failure to comply with local rule).

There are a few supported assertions: Jones' work was excellent as of October 1, 1994 (supported by an LSC memorandum so-stating); LSC issued a memorandum on October 24, 1994, stating that Jones resigned from her position (supported by the memorandum); Jones wrote a note, stating that she was turning in her badge on October 25, 1994, that she did so in response to Michael Crane's instructions, and that she did not resign (supported by the note); LSC reassigned Jones as of October 25, 1994, to another account (supported by an LSC memorandum to all personnel, regarding "promotion," stating that Jones had been reassigned); Jones filed her EEOC charge on November 2, 1994 (supported by the charge document); and LSC issued a written reprimand to Gatzambide via a "Decision Memorandum" for asking "Improper Questions About an Employee's Personal Life" on November 28, 1994 (supported by the decision memorandum).

■■■ The court notes that, at summary judgment, it may consider only evidence which would be admissible at trial under the Federal Rules of Evidence. *Whitted v. General Motors Corp.*, 58 F.3d 1200, 1204 (7th Cir.1995). LSC states correctly that Jones has not authenticated any of the submitted documents and that they are not self-authenticating. *See* Fed.R. of Ev. 902. Thus, the court may also strike those submissions and corresponding allegations. Defendants have the right to demand authentication of documents pursuant to Federal Rule of Evidence 901, especially as to Jones' handwritten letter. LSC's attitude of agnosticism regarding the documents in this case is not unreasonable in light of Jones' disregard for Local Rule 12. The court might draw inferences regarding the sources of the various documents based on the documents themselves, but where Jones offers no explanation or argument on the absence of authentication, the court will not assume such a burden. Had Jones complied with Local Rule 12 and authenticated her submissions, the court would have ruled that the above-named documents, at least minimally, meet the standards of admissibility as business records or admissions of a party. The court will consider Jones' supported allegations in the alternative.

## II. DISCUSSION

■■■ To defeat a motion for summary judgment, the non-movant must marshal evidence sufficient to raise a genuine issue of material fact. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Summary judgment shall be rendered only where the pleadings, depositions, and admissions of record, together with any affidavits, demonstrate there is, indeed, no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Motions for summary judgment in employment discrimination cases "must be decided with particular care, given the extent to which the merits often turn on questions of credibility and intent." *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 893 (7th Cir.1996). Still, under Rule 56(c), summary judgment is appropriate where a party has failed to establish an essential element of its case for trial. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

■ To allege sexual harassment properly, Jones must allege facts which show that any harassment was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Chalmers v. Quaker Oats Co.,* 61 F.3d 1340, 1345 (7th Cir.1995). The behavior must have denied Jones "the right to participate in the work place on equal footing with others similarly situated." *Scott v. Sears, Roebuck & Co.,* 798 F.2d 210 (7th Cir.1986). A single act can, in some cases, create a hostile work environment and, thus, constitute sexual harassment. *King v. Board of Regents of Univ. of Wis. Sys.,* 898 F.2d 533, 537 (7th Cir.1990).

LSC argues that Jones' hostile work environment claim fails as a matter of law because Gatzambide's conduct was too isolated and benign to alter the conditions of her employment. The Seventh Circuit has held repeatedly that conduct far more severe and pervasive than Gatzambide's does not create a hostile work environment as a matter of law. In *Koelsch v. Beltone Elec. Corp.,* 46 F.3d 705 (7th Cir.1995), a hostile work environment claim failed as a matter of law where a supervisor, each on separate occasions, (1) repeatedly stroked the plaintiff's leg, (2) grabbed her buttocks, and (3 & 4) twice asked her out on dates. *Id.* at 706 (noting that even if the stroking and grabbing had not been barred by limitation provisions, the totality of the complained-of incidents was insufficient to warrant recovery). In *Saxton v. American Tel. & Tel. Co.,* 10 F.3d 526 (7th Cir.1993), another hostile work environment claim failed as a matter of law where a supervisor, again on separate occasions, (1) made inappropriate remarks, (2) kissed, (3) repeatedly touched the plaintiff against her will and (4) chased her around a forest preserve. *Id.* at 533. In *Weiss v. Coca–Cola Bottling Co. of Chicago,* 990 F.2d 333 (7th Cir.1993), yet another hostile work environment claim failed as a matter of law even though a male co-worker, once again on separate occasions, (1) repeatedly touched and attempted to kiss the plaintiff, (2) asked her out, and (3) placed "I love you" signs at her work-station. *Id.* at 337.

■ In the instant case, Gatzambide's conduct was substantially more isolated and benign than that which the Seventh Circuit has already held to be inadequate as a matter of law. On one day, in the course of a few hours at most, Gatzambide asked Jones how she would feel about dating a white person, stared at her during one elevator ride, and later told her that he had a crush on her and would kiss her face (although he never attempted to do so). He never touched her. At most, Gatzambide's conduct was tepidly offensive; it made Jones "uncomfortable." *See Galloway v. General Motors Serv. Parts Ops.,* 78 F.3d 1164, 1166 (7th Cir.1996) ("[W]e [have] created a safe harbor for employers in cases in which the alleged harassing conduct is too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of her sex"). In light of Seventh Circuit precedent, although Gatzambide's conduct may not have been socially acceptable to Jones, the court finds that as a matter of law, his conduct could not have created an actionable hostile work environment. The court has found no authority, and Jones points to none, which would create liability or justify damages on the ground that Jones was "uncomfortable" in her work environment.

■ LSC also argues that Jones' claim fails because she refused to cooperate with LSC's investigation although LSC took prompt, remedial action against Gatzambide. Employers are not strictly liable for their employees' sexually harassing behavior. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 69–70, 106 S.Ct. 2399, 2406–07, 91 L.Ed.2d 49 (1986). An employer is liable for an employee's harassing conduct "only if, knowing or having reason to know of the misconduct, the employer unreasonably fails to take appropriate corrective action." *Guess v. Bethlehem Steel Corp.,* 913 F.2d 463, 465 (7th Cir.1990). *See also, Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 429 (7th Cir.1995) ("[T]he employer's legal duty is ... discharged if it takes reasonable steps to discover and rectify acts of sexual harassment of its employees.") To defeat an employer's showing that it took prompt remedial measures once it learned of sexual

harassment, a plaintiff must produce evidence of a "significant shortcoming" in the employer's response. *Saxton,* 10 F.3d at 535. When evaluating the employer's response, the court may consider "whether the employer's efforts were both timely and reasonably likely to prevent the conduct underlying her complaint from recurring." *Jansen v. Packaging Corp. of Am.,* 895 F.Supp. 1053 (N.D.Ill.1995) (citation omitted).

■ An employer is not required to terminate a harasser to satisfy the appropriate remedial action test. *Barrett v. Omaha Nat'l Bank,* 726 F.2d 424, 427 (8th Cir.1984). The court recognizes that employers may face litigation from both accuser and accused when attempting to deal with allegations of discrimination within their work force. *See, e.g., Sarsha v. Sears, Roebuck & Co.,* No. 89 C 8836, 1994 WL 46701 (N.D.Ill. Feb 14, 1994) (addressing age discrimination case in which proffered reason for termination was violation of no-dating policy designed to avoid sexual harassment issues).

In the instant case, Jones has admitted that, within an hour after Jones complained to LSC of Gatzambide's conduct, LSC's human resources personnel met with her, discussed her complaint, gave her the day off, appointed an investigator, and told her that the investigator would contact her within twenty-four hours. She also admitted that, when the investigator did contact her, she refused to speak with the investigator and refused to disclose the name of her attorney. Ultimately, LSC issued a written reprimand to Gatzambide.

■ Admissions are trumps for summary judgment purposes. *See Reed v. Gardner,* 986 F.2d 1122, 1129 (7th Cir.1993) (Posner, J. dissenting in part). Given the admissible evidence and the arguments in the instant case, the court had difficulty imagining, and Jones has not proposed, any action which LSC should have taken in light of Jones' complaint, beyond that which it did take. Although Gatzambide's conduct may have been subjectively offensive, it certainly did not demand that LSC take immediate action against Gatzambide absent an investigation. Jones thwarted the investigation. "When management attempts to delve into plaintiff's claim and plaintiff does not cooperate, she cannot later argue that management is responsible." *Foulks v. Allstate Ins. Co.,* No. 94 C 7590, 1996 WL 501571, at *6 (N.D.Ill. Aug. 30, 1996). Employers stand in a difficult position when faced with charges of sexual harassment against their employees. In the instant case, given the relative tepidity of Gatzambide's conduct and Jones' refusal to cooperate, the court finds that, as a matter of law, LSC's conduct was appropriate. Jones has not come forth with any evidence raising any question of fact on the issue.

■ In closing its discussion of Jones' federal claim, the court notes that, in her response to LSC's motion, Jones appears to argue the viability of a retaliation theory of recovery against LSC. However, the court finds no indication from the Complaint that Jones even attempted to state a claim for retaliation, much less that she did so, and even less of an indication that she presented any support for such a theory. Jones has not sought leave to amend her Complaint, and she may not do so via responsive pleadings. *Wallace Computers Servs., Inc. v. David Noyes & Co.,* 93 C 6005, 1994 WL 23110, at *7 (N.D.Ill. Jan. 21, 1994) (citation omitted).

■ Even so, to establish claims for retaliation, plaintiffs must show that (1) they engaged in statutorily protected activity, (2) they suffered adverse employment action, and (3) there is a causal link between the protected activity and the adverse action. *Rennie v. Dalton,* 3 F.3d 1100, 1109 (7th Cir.1993). Even assuming protected activity (Jones' complaint to LSC), Jones has produced nothing, much less anything admissible, which would indicate that she suffered adverse employment action. She may have wanted to establish that LSC attempted to move her to another location, and terminated her when she refused to go, in retaliation for her complaint of harassment. She has not done so. She does not even state, much less support, an argument that any transfer which may have occurred (though she has not introduced proper evidence of a transfer)

effected her adversely.[3] Not surprisingly, Jones also has not introduced any evidence which would indicate that she was terminated. As such, the court would have to find, as a matter of law, that she suffered no adverse employment action and, thus, that she cannot recover for retaliation.[4]

In sum, as a matter of law, Jones has not come forth with any evidence demonstrating a material question of fact. She cannot establish her claim. As such, summary judgment is granted in favor of LSC.

As the court grants summary judgment on the federal claim, it will not retain jurisdiction over Jones' "state claim." It would not serve the interests of justice for the court to attempt to resolve that claim, since it is even unclear under which state theory Jones attempts to proceed.

LSC has also moved for sanctions based on the *de minimus* allegations in Jones' Complaint and the deficient nature of her response to LSC's summary judgment motion. Although the court is far from satisfied with Jones' submissions, it finds that they do not sink to the level of sanctionable filings in civil rights litigation.

## III. CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of LSC. However, LSC's motion for sanctions is denied.

IT IS SO ORDERED.

---

3. Indeed, a move would have separated her from Gatzambide.

4. However, regarding retaliation, all of this is an aside. Jones appears to have made no attempt to state or support a retaliation theory. Although a complaint need not plead the proper legal

theory to survive a motion to dismiss, at summary judgment, plaintiffs must demonstrate, arguing proper legal theories supported by admissible evidence, that they can establish their claim for relief at trial. Jones has not done so on any sort of retaliation theory.