**J.L. FORTENBERRY, Plaintiff,**

v.

**UNITED AIRLINES, Defendant.**

No. 96 C 3198.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 30, 1998.

H. Nasif Mahmoud, McKinney, Willis & Mahmoud, D. Tondelayo Watkins, Chicago, IL, for Plaintiff.

James W. Gladden, Jr., Janet Lynn Hall, Mayer, Brown & Platt, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff J.L. Fortenberry filed a five-count complaint against Defendant United Air Lines claiming that defendant discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. This court, however, dismissed counts III and IV pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Therefore the only remaining counts are counts I, II, and V.[1] Defendant United Air Lines moves for summary judgment on Counts I, II and V pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the court grants defendant's motion for summary judgment on all three counts.

### Background [2]

On June 22, 1995, Plaintiff J.L. Fortenberry ("Fortenberry") was performing his duties as ramp service employee for Defendant United Air Lines ("United"). (Def.'s 12(M) ¶ 8). While approaching his loading area on a tractor, Fortenberry was confronted by a fellow employee, Matthew McRoberts ("McRoberts"). (Def.'s 12(M) ¶ 9.) McRoberts told Fortenberry to get his "black ass" off of the tractor. (Id.) Fortenberry and McRoberts argued about who was to use the tractor. (Def.'s 12(m) 10.) Each one attempted to prevent the other from using the tractor—McRoberts by unhooking the carts and Fortenberry by pulling the electric plug. (Def.'s 12(m) ¶ 10.) McRoberts moved away from the tractor. (Def.'s 12(m) ¶ 12.) Scott Williams, another employee, approached them to stop the argument. (Def.'s 12(m) ¶ 14.) McRoberts returned shortly thereafter and again told Fortenberry to "get his black ass off of the tractor." (Def.'s 12(m) ¶ 15.)

At this point, Larry Maigler ("Maigler"), a supervisor, overheard what McRoberts said and instructed McRoberts to leave the area. (Def.'s 12(M) ¶¶ 16, 17.) Maigler asked Fortenberry what, if any, action Fortenberry wanted to take. (Def.'s 12(M) ¶ 17.) Fortenberry asked Maigler to speak to McRoberts. (Def.'s 12(M) ¶ 18.) Maigler later spoke with McRoberts and told him that his language was inappropriate. (Def.'s 12(M) ¶ 19.)

Later that day, while Fortenberry and McRoberts were riding the same bus from

---

**1.** In Count I, plaintiff alleges that defendant "knew or should have known" that plaintiff's fellow employee would discriminate against plaintiff. In Count II, plaintiff alleges that defendant violated Title VII when it failed to discharge plaintiff's fellow employee for racially his discriminatory conduct directed at plaintiff. Finally, in Count V, plaintiff further alleges that defendant employer is liable under Title VII for his fellow employee's conduct during the incident.

**2.** The following facts are taken exclusively from Defendant United's 12(m) Statement because plaintiff has failed to comply with Local Rule 12(n), by submitting a 12(n) response and statement of additional facts. If this 12(n) statement is not properly submitted, the court may deem admitted the facts submitted by the moving party. Fed.R.Civ.P. 56(e); *Flaherty v. Gas Research Institute*, 31 F.3d 451, 453 (7th Cir.1994) (citations omitted). Therefore, the court will deem the facts in defendant's 12(m) statement as admitted.

the work area to the parking lot, several of their co-workers began joking that McRoberts had "whipped Fortenberry's ass" and that McRoberts was "the champ". (Def.'s 12(M) ¶ 20.) There were no comments regarding Fortenberry's race. (Def.'s 12(M) ¶ 21.)

The next day, June 23, 1995, Fortenberry communicated to Maigler that he wanted to pursue charges against McRoberts to the fullest extent. (Def.'s 12(M) ¶ 22.) Maigler arranged for Fortenberry to meet with Chuck Jindra ("Jindra"), the manager on duty. (Def.'s 12(M) ¶ 23.) Jindra met with Fortenberry and McRoberts separately in order to find out exactly what had happened. (Def.'s 12(M) ¶ 24.) After meeting with each person separately, Jindra decided that McRoberts was not being honest. (Def.'s 12(M) ¶ 25.) Jindra then suspended McRoberts pending further investigation, and proposed a Level 5 discipline—discharge—for violating United's rules of conduct. (Def.'s 12(M) ¶¶ 25, 26.)

Around June 24, 1995, Jindra received a report written by Williams, the co-worker who witnessed part of the incident between McRoberts and Fortenberry on June 22, 1995. (Def.'s 12(M) ¶¶ 28, 29.) The report stated that Williams thought he saw "arms flying" and deduced that McRoberts and Fortenberry were exchanging blows. (Def.'s 12(M) ¶ 28.) In light of the report, Jindra proposed that a Level 4 discipline be imposed on Fortenberry. (Def.'s 12(M) ¶ 29.)

Both Fortenberry and McRoberts received hearings on their individual discipline sanctions. (Def.'s 12(M) ¶¶ 31, 35.) Fortenberry's hearing took place on July 12, 1995. Fortenberry was represented by his union, International Association of Machinists and Aerospace Workers ("IAM"). (Def.'s 12(M) ¶ 32.) United was represented by Jindra, and Dave Schneider ("Schneider") acted as the hearing officer. (Def.'s 12(M) ¶ 32.) Schneider concluded that Fortenberry's conduct did not warrant discipline. (Def.'s 12(M) ¶ 33.) The investigative hearing on McRoberts' proposed Level 5 sanction took place on July 6, 1995. (Def.'s 12(M) ¶ 35.) McRoberts was represented by IAM. (Def.'s 12(M) ¶ 36.) Again, Jindra represented United and Schneider acted as the hearing officer. (Def.'s 12(M) ¶ 36.) Schneider concluded that McRoberts' conduct warranted a Level 4 discipline plus a 30–day suspension without pay. (Def.'s 12(M) ¶ 37.) Since McRoberts returned to work there have been no other incidents of racially harassing behavior directed towards Fortenberry. (Def.'s 12(M) ¶ 39.)

On May 29, 1996, after receiving his right to sue letter from the E.E.O.C., plaintiff filed a five-count complaint against defendant. Defendant moved for a judgment on the pleadings on Count I, which this court denied. The court, however, granted defendant's motion to dismiss Counts III and IV. (*See* August 6, 1997 Mem. Opinion and Order.) Now, defendant moves for summary judgment.

### Analysis

Defendant United Air Lines moves the court to enter summary judgment on its behalf under Rule 56 of the Federal Rules of Civil Procedure. The court will render summary judgment only if the factual record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 173 (7th Cir.1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In ruling on a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. *Bratton*, 77 F.3d at 171 (citation omitted); *Sullivan*, 78 F.3d at 325 (citation omitted).

On a motion for summary judgment, the moving party "bears the initial burden of showing that no genuine issue of material fact exists." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Then the burden shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord, NLFC, Inc. v. Devcom Mid–America, Inc.*, 45 F.3d 231, 234 (7th Cir.1995) (citations omitted), *cert. denied*, 515 U.S. 1104, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995). These burdens are reflected in Rule 12 of the Local

General Rules for the Northern District of Illinois. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir.1994). Under Rule 12(m)(3), the moving party must submit a statement of material facts in the form of short numbered paragraphs sup-' ported by specific references to the factual record. Under Rule 12(n)(3), the nonmoving party must submit a response to each such paragraph, including (in the case of disagreement) specific references to the factual record.[3]

If the nonmoving party fails to disagree with a fact in the moving party's 12(m) statement, the court will deem that fact admitted. *See* Local Rule 12(n)(3). Similarly, if the nonmoving party disagrees with a fact in the moving party's statement but fails to support its disagreement with a specific reference to the factual record, the court may deem that fact admitted as well. Fed.R.Civ.P. 56(e); *Flaherty v. Gas Research Institute*, 31 F.3d 451, 453 (7th Cir.1994) (citations omitted). The Seventh Circuit Court of Appeals has "repeatedly upheld the strict enforcement of these rules." *Waldridge*, 24 F.3d at 922; *e.g.*, *Knoblauch v. DEF Express Corp.*, 86 F.3d 684, 690 (7th Cir.1996).

■ In this case, Fortenberry did not submit either a response to United's 12(M) Statement or a 12(N) Statement of additional facts disputing United's alleged facts. Where the nonmoving party fails to submit a 12(N) statement the court may deem admitted the facts submitted by the moving party. Fed.R.Civ.P. 56(e); *See Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir.1994); *Flaherty v. Gas Research Institute*, 31 F.3d 451, 453 (7th Cir.1994) (citations omitted). Moreover, the Seventh Circuit has upheld decisions by district courts disregarding additional facts asserted in the memorandum instead of a separate Rule 12(N) Statement. *See Midwest Imports Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir.1995); *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 518 (7th Cir. 1992).

Applying this standard, the court deems all facts in United's 12(M) Statement admitted. Thus, the court will assess Fortenberry's claims in light of the uncontested facts in United's 12(M) statement.

## I. COUNT I

■ Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e–2(a)(1). Title VII bars not only tangible discrimination, but also conduct that creates hostile work environments. *Dey v. Colt Constr. and Dev. Co.*, 28 F.3d 1446, 1453 (7th Cir.1994).

■ A hostile or abusive work environment consists of "discriminatory intimidation, ridicule and insult" in the workplace. *Dey*, 28 F.3d at 1453 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). The abuse in the workplace must go beyond unpleasantness or mere offensive utterances. *Harris*, 510 U.S. at 21, 114 S.Ct. 367; *Drake v. Minnesota Mining & Manufacturing Co.*, 134 F.3d 878, 885 (7th Cir.1998) (citing *Carr v. Allison Gas Turbine Div., Gen. Motors Corp.*, 32 F.3d 1007, 1009 (7th Cir.1994)). To impose liability against an employer for a hostile work environment, a plaintiff must establish (1) hostile, abusive conduct that alters the conditions of employment; and (2) a negligent response by the employer. *Carr*, 32 F.3d at 1009; *Saxton v. Am. Tel. and Telegraph Co.*, 10 F.3d 526, 533, 535 (7th Cir.1993).

To establish a hostile work environment, the discriminatory intimidation, ridicule and insult must be sufficiently severe and pervasive to alter the conditions of employment. *Harris*, 510 U.S. at 21, 114 S.Ct. 367 (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)); *Dey*, 28 F.3d at 1453 (citations omitted); *Saxton*, 10 F.3d at 533 (citations omitted). Moreover, the work environment must be

---

**3.** Rule 12(N)(3) further instructs the nonmoving party to submit a statement of any additional facts requiring denial of summary judgment, in the form of short numbered paragraphs supported by specific references to the factual rec- ord. In turn, Rule 12(M)(3) instructs the moving party to submit a concise reply to any such additional facts, including (in the case of disagreement) specific references to the factual record.

hostile to the reasonable person, as well as to the subjective plaintiff. Harris, 510 U.S. at 21, 114 S.Ct. 367.

As stated above, the only facts before the court are those set forth in United's 12(M) Statement. Thus, the issue before the court is whether McRoberts' racially disparaging comments made on June 22, 1995 incident created a hostile work environment.

■ When evaluating whether the plaintiff's work environment is hostile within the meaning of Title VII, the Seventh Circuit requires courts to consider a variety factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Saxton v. American Telephone and Telegraph Co.*, 10 F.3d 526, 533 (7th Cir.1993) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

■ The Seventh Circuit has held that "occasional or sporadic uses of racial slurs or epithets will not in and of themselves support an actionable claim of racial harassment under Title VII." *North v. Madison Area Association for Retarded Citizens–Developmental Centers Corp.*, 844 F.2d 401, 409 (7th Cir. 1988). *See also Nazaire v. Trans World Airlines, Inc.*, 807 F.2d 1372, 1380 (7th Cir. 1986), *cert. denied*, 481 U.S. 1039, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987) (same), *Cross v. Roadway Express*, 861 F.Supp. 698, 705 (N.D.Ill.1994), *aff'd*, 51 F.3d 275 (7th Cir. 1995).

■ In this case, McRoberts' comments to Fortenberry on June 22, 1995 to "get his black ass" off of the tractor, while deeply insulting, do not rise to the level of a hostile environment claim under Title VII because McRoberts' insults were limited to the single incident on June 22, 1995. (Def.'s 12(M) ¶ 39.) Even if McRoberts' conduct was pervasive enough to subjectively create a hostile

work environment, Fortenberry fails to provide enough evidence of the severity of the conduct to survive the court's inquiry under an objective standard. A reasonable person in Fortenberry's position would certainly have been offended, even deeply upset by McRoberts' disparaging remarks. But, a single instance of such conduct cannot reasonably be construed to alter the conditions of Fortenberry's work environment.

Nor can the behavior of Fortenberry's co-workers on the bus after the incident with McRoberts on June 22, 1995 be reasonably construed to alter the conditions of Fortenberry's work environment. (Def.'s 12(M) ¶ 20.) While the co-workers did taunt Fortenberry about McRoberts' earlier comments, they made no racially disparaging remarks. In addition, the evidence shows that such remarks by co-workers were limited to the one instance on the bus.

Evidence of McRobert's use of disparaging racial language is limited to conduct which occurred on one day, June 22, 1995, and, which, has not been repeated since. Thus, McRoberts' conduct on June 22, 1995 fails to exhibit the frequency or severity of discriminatory conduct required under Title VII to sustain an actionable claim for harassment. Under the standards clearly set forth by the Supreme Court in *Meritor* and the Seventh Circuit in *North*, McRoberts' use of racial slurs on June 22, 1995 does not support an actionable claim of racial harassment under Title VII. *See Meritor*, 477 U.S. at 67, 106 S.Ct. 2399, *North*, 844 F.2d at 409.[4]

■ Moreover, Fortenberry misstates the requirements of Title VII when he asserts in his claim that United knew or should have known that McRoberts might commit the racially disparaging conduct on June 22, 1995. Under Title VII, if a plaintiff can establish a hostile work environment claim, the plaintiff must then show that the employer knew or should have known about the harassing employee's conduct and failed to take appropriate remedial action. *See Bacon*

---

**4.** Fortenberry also alleges in Count I that United "knew or should have known" that McRoberts had a propensity to commit racially harassing conduct. (Mem. Of Law in Supp. Of Pl.'s Objections to Def.'s Mot. For Summ. J., ¶ 17.) Fortenberry alleges numerous other incidents of harassing behavior which were not placed in dispute—either by his reporting them to United or by proper submission to this court in a 12(N) Statement.

*v. Art Inst. of Chicago,* 6 F.Supp.2d 762, 767 (N.D.Ill.1998) (citing *McKenzie v. Illinois Dep't of Transp.,* 92 F.3d 473, 480 (7th Cir. 1996)). There is no dispute as to whether United knew that McRoberts committed the allegedly harassing acts on June 22, 1995. Maigler, the United supervisor on the scene, actually overheard McRoberts make the racially disparaging comment to Fortenberry. (Def.'s 12(M) ¶ 16.) On June 23, 1995, the day after the incident at issue, Maigler arranged a meeting between Fortenberry and Jindra, United's manager on duty. (Def.'s 12(M) ¶ 23.) Thus, management at United was notified of McRoberts' conduct while it was actually happening.

## II. COUNT II

■ In Count II, plaintiff alleges that defendant violated Title VII by failing to take appropriate remedial measures once it learned of McRoberts' racially harassing conduct. Fortenberry argues that McRoberts' punishment, a Level 4 discipline as well as a 30–day suspension, fell short of the remedial measures required under Title VII. Fortenberry asserts that the proper action under Title VII would have been to fire McRoberts.

Again, Fortenberry misstates the requirements of Title VII. An employer is liable under Title VII if (1) the employer knows or has reason to know of the misconduct; and (2) the employer unreasonably fails to take appropriate corrective action. *Carr,* 32 F.3d at 1009. Fortenberry, however, mistakenly separates these steps into different claims. As discussed above, the court's finding that Fortenberry failed to establish hostile or abusive conduct that altered the conditions of his employment renders moot any further inquiry into these subsequent requirements under Title VII. However, assuming, *arguendo,* that Fortenberry *did* show hostile conduct that altered the conditions of his employment, he fails to establish that the remedial measures United used to discipline McRoberts were insufficient under Title VII.

The Seventh Circuit held that where an employer takes reasonable steps to discover and rectify the acts of harassment of its employees, the employer's legal duty for harassment is discharged. *See Baskerville v.*

*Culligan International Co.,* 50 F.3d 428, 432 (7th Cir.1995). The Seventh Circuit also instructs that "the employer acts unreasonably either if it delays unduly or if the action it does take, however promptly, is not reasonably likely to prevent the misconduct from recurring." *Guess v. Bethlehem Steel Corp.,* 913 F.2d 463, 465 (7th Cir.1990). Courts in this circuit have held that an employer's remedial action need not meet the complaining employee's expectations, it need only be timely and reasonable. *See Saxton,* 10 F.3d at 535–36; *Jones v. Gatzambide,* 940 F.Supp. 182, 188 (N.D.Ill.1996); *Eckroth v. Rockford Products Co.,* No. 94 C 50027, 1996 WL 377170, *7 (N.D.Ill. July 1, 1996).

In this case, United took several steps to discipline McRoberts. When Maigler, a supervisor, overheard McRoberts' statements to Fortenberry, Maigler intervened and instructed McRoberts to leave the area. (Def.'s 12(M) ¶¶ 16, 17.) Maigler immediately asked Fortenberry what action Fortenberry wanted to take. (Def.'s 12(M) ¶ 17.) Maigler complied with Fortenberry's own requests for proceeding with disciplining McRoberts. (Def.'s 12(M) ¶¶ 18, 22, 23.) McRoberts was disciplined in accordance with United procedures. (Def.'s 12(M) ¶¶ 24–38.) McRoberts was immediately suspended from work pending further investigation. (Def.'s 12(M) ¶ 25.) After an investigative hearing, United sanctioned McRoberts with a Level 4 discipline, a final warning prior to discharge, as well as a 30–day suspension without pay. (Def.'s 12(M) ¶ 37.)

United's response to McRoberts' conduct on June 22, 1995 was clearly prompt, as United took steps to discipline McRoberts beginning on June 22, 1995—the day of the incident. That United's chosen discipline of McRoberts did not meet Fortenberry's expectations is irrelevant absent evidence that United's actions were unreasonable. *See Eckroth,* No. 94 C 50027, 1996 WL 377170, at *7. Nevertheless, *in order to meet the standard for proper remedial measures under Title VII, United's response must have been reasonably calculated to prevent any further allegedly harassing conduct.* *See Guess,* 913 F.2d at 465. In *Baskerville,* the Seventh Circuit held that a response by the employer

was sufficient under Title VII where there was no recurrence of the offending behavior and the employer had (1) promptly investigated the complaint (2) disciplined the offending employee by placing him on probation and, (3) withheld a salary increase. 50 F.3d 428.

In this case, Maigler, a manager, immediately told McRoberts the behavior was inappropriate. (Def.'s 12(M) ¶ 19.) McRoberts was suspended by United twice – once while the investigation was pending, and again, without pay following the hearing. (Def.'s 12(M) ¶¶ 25, 37.) Finally, McRoberts has not made any further racially disparaging comments to Fortenberry since the June 22, 1995 incident. (Def.'s 12(M) ¶ 39.) Based on these undisputed facts, the court finds that United's response was reasonably calculated to prevent further harassment.

Therefore, the court grants United's motion for summary judgment on plaintiff's Count II because plaintiff failed to set forth hostile, abusive conduct that altered the conditions of employment. Even if plaintiff had demonstrated that McRoberts' conduct was abusive and altered the conditions of his employment, the court would still grant defendant's motion for summary judgment on Count II because the undisputed facts establish that United's response to McRoberts' conduct was prompt as well as reasonably calculated to prevent further offending behavior.

### III. *COUNT V*

Finally, in Count V, Fortenberry alleges that United is directly liable under Title VII for McRoberts' conduct during the June 22, 1995 incident. However, as discussed at length above, Title VII employer liability depends first on establishing hostile or abusive conduct that alters the conditions of employment; second, that the employer knew or should have known about the offending conduct; and third, that the employer failed to take the proper remedial measures. *See Carr*, 32 F.3d at 1009. Fortenberry's failure to establish any of these required steps under Title VII forecloses his claim that United is in any way liable under Title VII for McRoberts' conduct on June 22, 1995.

Therefore, the court grants United's motion for summary judgment on Count V.

### Conclusion

For the reasons set forth above, the court grants defendant's motion for summary judgment.